COMMONWEALTH *vs.* DINO GEROMINI
(and a companion case).

Worcester. December 1, 1969. — February 17, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & QUIRICO, JJ.

*Perjury.*

At the trial of an indictment against the police chief of a town alleging
perjury in that while testifying as a defence witness at the trial of
another person for a crime committed in another town on a certain
date, the chief falsely stated that on that date in his own town he
saw the other person, talked with him, and took him into custody,
where it appeared that the chief made such statements on direct ex-
amination but that on cross-examination he substantially qualified
them by declaring that he had no memory of the date of the occurrence
with the other person independent of entries made in a police log
book, it was held that there was no basis for finding beyond a reason-
able doubt that the chief actually made the statements with the mean-
ing alleged in the indictment. [64–65]

At the trial of an indictment against a police chief for perjury in that
at a criminal trial of another person the chief falsely testified that
he had typed an entry in the police log book concerning the other
person, where it appeared that the alleged false statement was made
on cross-examination and about two and one-half years after the in-
cident and was repeatedly qualified by statements respecting the
practice of other officers to type his name alongside an entry, it was
held that, reading the chief's testimony as a whole, it could not be
said that he explicitly and unqualifiedly made the statement attrib-
uted to him. [65–66]

At the trial of an indictment against a police chief alleging perjury in
that while testifying as a defence witness at the criminal trial of an-
other person the chief falsely stated that he had received information
relative to the registration number of the other person's automobile
"two, three or four weeks" before the date of the commission of the
crime with which the other person was charged, a conclusion that
the chief made the unequivocal statement alleged was not warranted
where it appeared that his testimony was given about two and one-
half years after the incident, was repeatedly qualified as dependent
on entries in a police log book, and included a statement "Two, three,
four, four weeks, I don't know how long it was." [66–67]

At the trial of an indictment against a police sergeant alleging perjury
in that while testifying at a criminal trial of another person the ser-
geant falsely stated that he had seen and talked with the other person
on a certain date, and in that the sergeant falsely stated that on
that date he "saw and read" entries in a police log book concerning
the other person, where it was clearly apparent from his testimony

that he was wholly dependent on the log book for the date, it was held that the meaning of his statements could not be construed as identical with the meaning alleged in the indictments.  [67–68]

Two INDICTMENTS found and returned in the Superior Court on May 13, 1968.

The cases were heard by *Lappin,* J.

*Manuel Katz* for the defendants.

*Stanley J. Jablonski,* Assistant District Attorney, for the Commonwealth.

SPALDING, J.  The defendants, Pellegri and Geromini, police chief and sergeant in Franklin, were indicted, tried and convicted on several counts of perjury.  They appeal under G. L. c. 278, §§ 33A–33G.

The indictments charge the defendants with making false statements while testifying as defence witnesses in the trial of *Commonwealth* v. *Kazonis,* 356 Mass. 649.  In that case Kazonis and three others were found guilty of several crimes arising out of the robbery of a bank in Shrewsbury on December 16, 1965.  Part of the Commonwealth's case against Kazonis consisted of the testimony of three eyewitnesses, who identified Kazonis as being in or near the bank at the time of the robbery.  Kazonis called as witnesses the defendants.  Pellegri testified in substance that on December 16, 1965, he saw a man, later identified as Kazonis, in a diner in Franklin.  On the basis of information previously received that the man was picking up "number play," he spoke to him and took him down to the station house.  The defendant Geromini assisted him in bringing the man in, and testified to that effect.  While both defendants purported to have a memory of the incident, they relied on the log book for the precise date of its occurrence.  The entries in the log book contained the information set forth in the margin.[1]  On cross-examination the defendant Pellegri was

---

[1] "Chief 10:15A  In with William J. Kazonis, 43 Cross St., Somerville, Mass.  I received in information that he comes into town to pick up number play, he is driving a 1963 Black Pontiac Hardtop sedan, Reg. 366-309, he goes into the Diner every time he comes into town, B&B diner.  Chief 10:40A Above out denies picking up play he is 6'1", Br. Hair, Blue eyes, slim, I advised him that every time he comes into town he is going to be watched, DAY MEN CHECK THIS SUBJECT EVERY TIME YOU SEE HIM."

informed that the registration number listed for Kazonis on that date was a 1966 registration number, and could not have been issued by December 16, 1965.[1]  The defendant then conceded that if this information was correct, the entry in the log book was erroneous and the Kazonis incident must have occurred in 1966.

Subsequent to the Kazonis trial, a grand jury indicted each defendant on several counts of perjury for statements made at the Kazonis trial.  Three counts against both defendants alleged as perjuricus their testimony that they saw and were with Kazonis in Franklin on December 16, 1965, between 10 and 10:40 A.M., that they talked with Kazonis and took him to the police station, where they talked further.[2]  In addition the defendant Pellegri is alleged to have testified that he himself typed the entries concerning Kazonis in the police log (count 4), and that he received information relating to the registration number of Kazonis's car some "two, three or four weeks" before December 16 (count 5).  The defendant Geromini is also charged with stating that he "saw and read" in the police log for December 16 the entries concerning Kazonis (count 4)

The defendants contend, among other things, that the court erred in refusing to strike a bill of particulars, in admitting testimony of witnesses identifying Kazonis at the robbery, and in denying motions for a finding of not guilty on each count.  Our decision on the last issue makes discussion of the other contentions unnecessary.

The crime of perjury in a judicial proceeding occurs whenever one "willfully swears or affirms falsely in a matter material to the issue or point in question."  G. L. c. 268, § 1.  When, as here, there is no question about the proceeding, or the materiality of the alleged statement, or the oath, three

---

[1] It later appeared that Kazonis's 1966 registration was mailed to him sometime after December 8, 1965.  Thus, it was theoretically possible for him to have had that registration number on December 16.

[2] An example of these counts, the language of which is typical of both indictments, alleges that the defendant Pellegri "did wilfully and corruptly testify and say in substance and effect that he saw and was with the said . . . Kazonis in . . . Franklin . . . between . . . shortly before 10:00 A.M. and 10:40 A.M. on December 16, 1965."

elements are essential to establish perjury: (1) that the al-
leged statement was made; (2) that it was false; and
(3) that it was made with wilful and intentional falsity.

In *Commonwealth* v. *Giles*, 353 Mass. 1, 11–12, we said
that subsequent disclosures of a witness during his testimony
must be taken "into account (a) in determining what . . .
[he] meant by his original answer and in deciding whether
any falsity in it was unintended, and (b) in weighing whether
and to what extent . . . [he] meant to correct or modify
that original answer." The test is subjective, i.e., what the
defendant in good faith and in fact did mean, as reasonably
inferred by the trier of the fact from all the circumstances,
including subsequent disclosures. If a witness's statement
under oath in a judicial proceeding is susceptible of several
meanings, or capable of a subjective meaning different from
the meaning of the words on their face, it is the "function
[of the trier of fact] to determine, within reasonable limits,
what . . . [he] meant by his answers" after fair considera-
tion of what he later disclosed. 353 Mass. at 12.

We are of opinion that there was insufficient evidence to
find that the defendants, in light of the qualified nature of
their testimony, made the statements alleged in the indict-
ments. A careful reading of the defendants' testimony at
the Kazonis trial and our holding in *Commonwealth* v. *Giles*,
353 Mass. 1, make this conclusion inescapable.

1. Counts 1, 2 and 3 against the defendant Pellegri allege
in substance that he stated in the Kazonis trial that he saw
Kazonis, talked with him, and took him into custody with
the help of the defendant Geromini on December 16, 1965.
Statements to this effect were made by the defendant on
direct examination. On cross-examination, however, the
defendant substantially modified and qualified this testi-
mony. While he remembered the incident with Kazonis,
he had no memory independent of the log book of the date
of that occurrence.[1] When the direct testimony is read to-

---

[1] Q. (By the prosecutor.) "Okay. Now, with respect to this particular
day, Chief, if you didn't have this ledger, there would be no way for you to
remember that this happened on the 16th of December?" A. "That's cor-
rect." "Yes, sir. When you say the 16th — I referred to the 16th solely

gether with the testimony on cross-examination, as the *Giles* rule requires, the defendant's original statements acquire a meaning substantially different from that alleged in the indictment. The meaning of his statement becomes in effect, "I saw and talked with Kazonis on December 16, 1965, because it so states in the log-book and I have no reason to think that inaccurate." Unlike the case of a retraction, in which a witness withdraws a statement previously made or admits its falsity,[1] the defendant's statements on cross-examination explained the meaning of his direct testimony. On direct examination he was not asked if his memory of the incident were independent of the log book, but merely what occurred that day. When his testimony is properly considered in the light of his later utterances, there is no basis for finding beyond a reasonable doubt that the defendant actually made the statements with the meaning alleged in counts 1, 2 and 3.

2. Count 4 charges the defendant Pellegri with falsely stating that he typed the entry in the log book concerning Kazonis. His testimony on this point emerged on cross-examination. Reading it as a whole, it cannot be said that the statement attributed to him was ever made. While he

---

because that is the date on this piece of paper." Q. "Well, is it your testimony, then, it could be a day other than the 16th of December when this happened?" DEFENDANT'S COUNSEL: "That's not his testimony. I object." A. "I am testifying from this log that has this date on it. I could not tell you, Your Honor, that on December 16, 1965, without this piece of paper, that this is what I did. I am refreshing my memory strictly from this piece of paper here. I certainly can't remember, without this piece of paper. I could never remember what happened on December 16, 1965." Q. (By the prosecutor.) "Well, Chief, do you have an independent memory, not looking at the paper, of the incident, that is of Mr. Kazonis being at the station and your talking to him and so forth?" A. "Yes, I do, sir." Q. "And you want to say that the 16th of December is the date you place on it because that is the date that it shows in this log?" A. "Yes, sir." Q. "Well, Chief, you say you think it was done. Are you indicating that there is some doubt in your mind as to whether this was done on this day?" A. "No. All I can tell you, sir, is that whatever I have testified to as what happened on December 16, I'm testifying from this piece of paper." Q. "All right. Now, with respect . . ." A. "Because I could never remember what happened two and a half years ago without that piece of paper."

[1] A retraction does not cure a prior perjury. *United States* v. *Norris,* 300 U. S. 564, 576. Perkins on Criminal Law, 392. See cases collected in fn. 10 in *Commonwealth* v. *Giles,* 353 Mass. 1, 13.

admitted that he could very well have typed the entry, in view of the practice of other officers to type his name along-side an entry and the lapse of two and a half years since the incident, he repeatedly qualified this assertion.[1] From the colloquy set out in the footnote, it does not appear that the defendant explicitly and unqualifiedly stated that he typed the entry.

3. The conviction on count 5 also cannot stand because there was no evidence that the defendant Pellegri ever stated that he had received the "information relative to the registration number 366–309 . . . two, three or four weeks before December 16, 1965." On questioning by the prosecutor in the Kazonis trial, the defendant was asked how he received the information concerning Kazonis's car and regis-tration number. He "believe[d]" he got it from one of four men in the diner who originally gave him information about Kazonis. "At that time" he believed he noted down the information about the automobile on a paper and left it under his desk blotter. On the date Kazonis was brought in, the defendant "thought" he transferred the information on the paper to the log book. The prosecutor then asked regarding the paper: "And it was on your desk for two, three, four weeks, whatever it was?" The defendant re-plied: "Two, three, four, four weeks, *I don't know how long it was*" (emphasis supplied).

To reduce this indefinite answer, occurring in the midst

---

[1] Q. (By the prosecutor.) "Did you type this entry [the log entry of December 16, 1965]?" A. "I can't say if I did or not, but I think I did." Q. "We have an entry here, '10:40-A Chief.' If you look at it, sir, is that entry made by you?" A. "I don't know, but I think it is, where my name is before it." Q. "And did you type that, sir [meaning the log entry]?" A. "If I typed this, I typed that." Q. "Well, why don't you tell us now, whether or not you did it?" A. "I cannot remember typing it, sir. I assume I typed it because 'Chief' is beside it. But there are times when someone will put 'Chief' down and write in what I tell him to type in the line." Q. "Do you have any recollection of telling anyone to type this?" A. "No, I do not." Q. "Okay. Now, with respect to this particular day, Chief, if you didn't have this ledger, there would be no way for you to remember that this hap-pened on the 16th of December?" A. "That's correct." Q. "Of your own knowledge, if you look at the sheet, help us which items you yourself ob-served being typed out aside of the 10:15 to 10:40." A. "Oh, I can't re-member that, sir." THE JUDGE: "Did you type any of them?" THE DE-FENDANT: "Sir, this is two and a half years ago and I can't remember."

of testimony repeatedly qualified as dependent on the log book, to the statement in the indictment would distort Pellegri's testimony and would be repugnant to our law of perjury. The second part of the defendant's reply, "I don't know how long it was," must be read together with the first, "Two, three, four, four weeks." In the context of the defendant's rather tentative and uncertain testimony, about an incident occurring some two and one-half years previously, we do not think that there was evidence that the defendant made the unequivocal statement charged in the indictment.

4. We are of opinion that the convictions on the four counts against the defendant Geromini also cannot be sustained. As we noted with regard to the first three counts against the defendant Pellegri, which are identical, the qualifications with which the assertions about Kazonis on December 16 were made actually transform Geromini's testimony into a statement substantially different in meaning from the one charged. Unlike Pellegri, Geromini's total dependence on the log book for the date in question was clear from the outset.[1] Accordingly, an accurate statement of the meaning of his testimony must include the qualifying clauses. Counts 1, 2 and 3 thus become: "I saw and talked with Kazonis on December 16 because it says so in the log, otherwise I would have no recollection of the date."

Count 4 charges Geromini with testifying: "on December 16, 1965 that he saw and read" the entries in the log book. It appears that the defendant did at two points in his testimony make statements with this meaning. It is equally apparent from the defendant's testimony taken as a whole that, although the defendant recalled reading the log book after the incident with Kazonis, his memory of the precise date depended wholly on the date listed in the log

---

[1] The following three answers, selected from at least fifteen answers to the same effect, illustrate the dependency of the defendant's testimony on the log: "I will have to refer to the record." "I don't know. According to the log, it is the 16th of December." "Well, I know according to the log. If it wasn't for that, I wouldn't know."

book.[1] In light of this testimony, it would be unreasonable to construe the meaning of the defendant's statements as identical to that in the indictments.

*Judgments reversed and findings
set aside.*

---

[1] Q. (By the prosecutor.) "And when is the first time that you had seen this [log book]?" A. "When I came back off the street, I'd seen it in the afternoon at the desk, and I just wanted to find out what happened." THE JUDGE: "What date?" THE DEFENDANT: "I don't remember the date. It says December 16th." THE JUDGE: "You say that's the date, then?" THE DEFENDANT: "Well, if it says so on there, I would say so, yes." Q. (By the prosecutor.) "You say you remember that on the 16th day of December, '65?" A. "No, I didn't say that."