COMMONWEALTH vs. PETER WHITE.

No. 06-P-1318.

Middlesex. April 2, 2007. - September 5, 2007.

Present: CYPHER, DOERFER, & KATZMANN, JJ.[1]

*Perjury. Evidence,* Relevancy and materiality.

A Superior Court judge properly denied the criminal defendant's motions for a required finding of not guilty on the charge of perjury, G. L. c. 268, § 1, where there was sufficient evidence from which the jury could determine, beyond a reasonable doubt, that the defendant made false statements, knowingly and wilfully, when testifying at his trial for rape that he included the word "loan" on the memo line of a check at the time he gave it to his wife (the complainant in the rape trial), and that he saw the wife sign a demand note made in connection with the loan, and where such evidence bore on the wife's credibility, an issue central to the rape trial. [72-78]

INDICTMENT found and returned in the Superior Court Department on June 28, 2005.

The case was tried before *Hiller B. Zobel,* J.

*David Duncan* for the defendant.

*Benjamin S. Halasz,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant appeals from his conviction by a Superior Court jury in January, 2006, of one count of perjury, G. L. c. 268, § 1, claiming his motions for a required finding of not guilty should have been allowed. We affirm.

*Background.* The defendant was indicted for allegedly committing perjury on two occasions during his jury trial in November, 2003, on charges of rape, assault and battery by means of a dangerous weapon, assault and battery, and intimidation of a witness. These charges had arisen from allegations made by the

---

[1]Justice Doerfer participated in the deliberation on this case prior to his retirement.

complainant, then the defendant's wife, after an incident during the night of May 4, 2002, in Framingham. With little, if any, physical evidence of rape or assault, the defense in the rape trial had concentrated on the wife's credibility, attempting to show that she sought to gain financially from the defendant, focusing on the defendant's assertion that he made a $20,000 loan to the wife by check, that she signed a demand note in connection with the loan, and that she fabricated the rape and assault allegations to avoid repaying the loan. The jury in the rape trial found the defendant not guilty on all charges.

After the rape trial, the wife obtained from her bank copies of the $20,000 check that had been at issue, and presented them to an assistant district attorney. At the rape trial, the copy of the check submitted by the defendant as an exhibit had contained the word "Loan" written in the memo line, and the defendant had testified, contrary to the wife, that he had written that word there at the time he gave her the check. The copies of the check the wife later obtained from her bank revealed that, at the time she deposited it in her account after receiving it from the defendant, the check did not have "Loan" or any other writing on the memo line. Thus, the defendant's indictment followed on two counts of perjury; the first for the allegedly false testimony concerning the presence of the word "Loan" on the check, and the second for allegedly false testimony that the wife had signed the demand note. A jury found the defendant guilty on the first count of perjury, and not guilty on the second count.

The defendant argues that his testimony regarding the check, on which his perjury conviction was based, was immaterial to the underlying rape trial as matter of law, and that therefore it was error for the judge to deny his motions for a required finding of not guilty.[2]

*Discussion.* We examine the sufficiency of the evidence relevant to the charge according to the well-established principles of *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979). "The crime of perjury is committed when one 'required to depose the truth in a judicial proceeding or in a proceeding in a course

---

[2]The defendant moved for a required finding of not guilty at the close of the Commonwealth's case, and renewed the motion at the close of all the evidence. Both motions were denied by the trial judge.

of justice, wilfully swears or affirms falsely in a matter material to the issue or point in question . . . .' G. L. c. 268, § 1. Our case law instructs that a false statement is material if it 'tend[s] in reasonable degree to affect some aspect or result of the inquiry.' *Commonwealth* v. *McDuffee*, 379 Mass. 353, 360 (1979), quoting *Commonwealth* v. *Giles*, 350 Mass. 102, 110 (1966)." *Commonwealth* v. *D'Amour*, 428 Mass. 725, 744 (1999). See *Commonwealth* v. *Kelley*, 33 Mass. App. Ct. 934, 934 (1992).

The testimony and exhibits before the jury at the perjury trial showed that the evidence and arguments of counsel at the rape trial included the following.[3]

The parties met in February, 2001, and soon began a close personal, as well as a business, relationship. The defendant operated a business that was experiencing some financial trouble, and the (soon-to-be) wife put aside her business to assist him. They were married in March, 2002, soon after the defendant purchased a marital residence in Framingham.

On May 4, 2002, the parties traveled to Cape Cod, but returned in a few hours after arguing and a physical confrontation. The wife went to bed, and the defendant went for a walk. When he returned, he undressed and got into bed. The wife testified that the defendant hugged and squeezed her and tugged on an abdominal scar, and that she told him to stop because he was hurting her. She related that he then penetrated her digitally and with a plastic coat hanger. She claimed to have fled to another bedroom, where she was assaulted when the defendant followed

---

[3]The Commonwealth's evidence in the perjury trial consisted of live testimony (of the wife and the rape trial prosecutor) and exhibits, including transcripts of the rape trial testimony of the wife and other witnesses, transcripts of the opening statements and closing arguments at the rape trial, and the demand note and various bank statements and copies of the check in question. The defendant, who elected not to testify at the perjury trial, presented his case through cross-examination of the Commonwealth's live witnesses; through readings by defense counsel and an assistant, during the defense case-in-chief, of selected portions of the above transcripts of rape trial testimony (including that of the defendant himself); and through arguments of counsel. As a form of "cross-examination" the prosecutor was permitted to follow each defense reading of a witness's transcribed testimony with a reading, with the same assistant's help, of other portions of that witness's testimony. No claim of error was or is raised as to the evidentiary procedures employed, nor does one suggest itself. Compare the conduct of the perjury trial in *Commonwealth* v. *Mitchell*, 15 Mass. App. Ct. 577, 578 (1983).

her, pushed her against a wall, threw her to the floor, and repeatedly pushed her head against the floor. She telephoned 911, and although she testified that the defendant hung up the receiver, and repeatedly hung up when the 911 operator called back, the police were alerted and arrived soon after.

The defendant testified that while he embraced and kissed the wife, and touched her arms, ribs, thighs, and stomach as far as under her underwear to the pubic area, when he was told to stop, he stopped. He stated he did not penetrate her, either digitally or with a plastic coat hanger, nor did he rape or assault her.

There was no physical evidence of rape, and little physical evidence of an assault. The wife had declined the suggestion of the police to be examined at a hospital. Accordingly, with the case resolving to a credibility contest, the defendant took the course of challenging the wife's credibility.

In the context of much evidence of the parties' past heavy drinking and disputes, and several incidents of claimed physical abuse by the defendant, the defense built upon the wife's testimony that following the alleged rape, she moved out of the marital residence, then filed for divorce and filed a civil action against the defendant. In cross-examination, defense counsel established that the civil suit requested over $1 million, and that the wife sought to attach assets of the defendant, principally trust assets of the defendant's mother, of over $3 million. Together with other evidence of expensive gifts and travel paid for by the defendant, he sought to show that the wife had been motivated by greed during much of their relationship.

Evidence of the check in issue emerged abruptly after the above cross-examination, when defense counsel asked the wife whether the defendant had loaned her $20,000, showing her a check the defendant wrote to her in that amount, dated January 10, 2002, and pointing out that "Loan" was written on the check's memo line. She acknowledged receiving the check, but denied it was a loan, stating it was for household expenses, as several other checks had been.[4] She recognized the check but denied that "Loan" had been written on it when she received it.

---

[4] The wife acknowledged one of these checks was a loan, although nothing was written in the memo line of that check.

Defense counsel then asked whether the wife signed a demand note for $20,000 on the same date, and showed her a document. The wife denied having seen it and repeatedly denied signing it. She stated that the signature looked like hers but she did not sign the note.[5]

The defendant testified at the rape trial that the wife started to have cash flow problems late in 2001, so he loaned her the $20,000, and she signed a note. He wrote "Loan" in the memo line at the time he wrote the check. He also wrote in the demand note that the wife "promises to pay to the order of [the defendant] within one week after the closing on the sale of her home [in Natick] the principal sum of twenty thousand dollars." He saw the wife sign the note and signed it himself as a witness.

In closing argument at the rape trial, defense counsel concentrated forcefully on the credibility of the parties. He asserted that the wife was motivated by greed, needed money, and sought to avoid paying the loan of $20,000 because she had received $81,000 from the sale of her former residence in Natick and would have to repay the loan. He asserted that her desire to avoid repayment was "just one link in the chain of fabrication" of the charges against the defendant. He suggested a monetary motive was evident as the marriage came to an end and the wife filed for divorce and filed a civil suit. Moreover, he stated that a conviction would aid her civil suit. He also raised credibility questions regarding inconsistencies in the wife's testimony about the incident.[6]

In the perjury trial, the wife reiterated that the $20,000 check was not a loan, that the memo line of the check did not contain the word "Loan" when she was given the check, and that she never signed the demand note, or even saw it before the rape trial. She also testified that after the rape trial, she obtained copies of the $20,000 check from her bank, observed that the word

---

[5]The rape trial prosecutor testified at the perjury trial that she did not receive a copy of the check prior to the rape trial, but that defense counsel sent a copy by facsimile during the rape trial. She testified that she never saw an original of the demand note.

[6]Among other challenges to the wife's testimony, the defendant principally explored the failure of the wife to tell the police that the defendant raped her with the plastic clothes hanger, and that on a vacation trip with a close friend, she said nothing about the allegation of rape.

"Loan" did not appear on the memo line when she deposited the check in her account, and submitted the copies to an assistant district attorney because she wanted it to be understood that she testified truthfully in the rape trial. The wife's observation of the blank memo line was corroborated by records from the defendant's bank.

We must determine whether the evidence was sufficient on each of the elements of perjury to withstand a motion for a required finding of not guilty. We summarize the applicable requirements of the crime of perjury from the model jury instruction: (1) the defendant "made a statement under oath in a judicial proceeding"; (2) "the statement was false"; (3) the defendant "knew the statement was false at the time [it was] made," and the defendant "made the statement willfully"; and (4) "the statement was material to the issue or point in question." Massachusetts Superior Court Criminal Practice Jury Instructions § 2.48 (Mass. Continuing Legal Educ. 1999 & Supp. 2003).[7]

There was sufficient evidence from which the jury could determine, beyond a reasonable doubt, that the defendant made false statements, knowingly and wilfully, when testifying that he included the word "Loan" on the memo line of the $20,000 check at the time he gave it to the wife, and that he saw the wife sign the demand note.

It also was open to the jury to determine whether the statements were material "to the issue or point in question." As presented to the jury, the defendant's statements were relevant to the wife's credibility. "[F]alsehoods going to credibility of a witness may at times figure as material for purposes of the crime of perjury." *Commonwealth* v. *Mitchell*, 15 Mass. App. Ct. 577, 581 (1983). See *Commonwealth* v. *D'Amour*, 428 Mass. 725, 744 (1999).

"[T]he test of relevancy and materiality is not whether the false testimony did in fact influence a pertinent determination. Instead, it must be decided whether, viewed objectively, the testimony directly or circumstantially had a reasonable and natural tendency to do so." *Commonwealth* v. *Giles*, 350 Mass. 102, 111

---

[7]After lengthy discussion in a charge conference, the judge stated he would instruct the jury following the model instruction. No requests for jury instructions were refused, and there were no objections to the judge's instructions.

(1966). "It is not beyond a layman's judgment whether the statements in question had a 'reasonable and natural tendency' to influence the pertinent determination. *Commonwealth* v. *Borans*, [379 Mass.] 117, 136 (1979), quoting from *Commonwealth* v. *Giles, supra* at 111." *Commonwealth* v. *McDuffee*, 379 Mass. 353, 365 (1979).

Viewed objectively, the defendant's statements bore on the wife's credibility, and evidence of those statements properly was submitted to the jury. The wife's credibility was central to a rape trial devoid of physical evidence of the crimes. The defendant's testimony, coupled with the altered check and the demand note, could have been taken by the rape trial jury as *concrete* evidence, otherwise absent, of her lack of credibility. There was no error in the denial of the defendant's motions for a required finding of not guilty of perjury.

The defendant argues that because the jury found him not guilty on the charge of perjury with respect to the demand note, the guilty verdict on the single charge of perjury concerning the check should be reversed. This is so, he urges, because the verdict rests on testimony that he asserts, in the context of the "wealth of evidence . . . demonstrating [the wife's] incredibility," was not material to the outcome of the rape trial.

The defendant's attempt to minimize the materiality of his statements by isolating them from other evidence is unavailing. "[M]ateriality refers to the connection between the words said only by the accused and the [issue in question]; other testimony which the . . . jury has heard . . . is therefore irrelevant to a determination of materiality." *Commonwealth* v. *Borans, supra* at 137, quoting from *United States* v. *Carson*, 464 F.2d 424, 436 (2d Cir.), cert. denied, 409 U.S. 949 (1972).

The defendant relies on *Commonwealth* v. *Mitchell*, 15 Mass. App. Ct. at 581, to urge that we also conclude the question of materiality should be withdrawn from the jury. That case is readily distinguishable because there, the "defendant's assertion of official marriage [was] immaterial to [his] drug trial." *Commonwealth* v. *D'Amour*, 428 Mass. at 745 n.21.[8] Here, the substantial nexus between the defendant's falsehood and cred-

---

[8]In *Mitchell*, "[t]here was no doubt of [the defendant's] intimacy with [the woman in question, who was also an alibi witness] over a considerable

ibility of the wife was objectively apparent, and established by evidence.

No reason appears in this case to disturb the jury's verdict or the consequences of the application of G. L. c. 268, § 1.

> "The statute manifests a strong legislative policy against perjury in judicial proceedings. The reasons underlying this policy are obvious. Perjury strikes at the heart of our judicial system and constitutes, in fact, 'an obstruction of justice,' the 'perpetration [of which] well may affect the dearest concerns of the parties before a tribunal.' *United States* v. *Norris*, 300 U.S. 564, 574 (1937). See *Bronston* v. *United States*, 409 U.S. 352, 357 (1973). In short, it is elementary that in a system which strives after truth as the predicate for doing justice, nothing is more pernicious than the deliberate introduction of falsehood. Our statute, like its Federal counterpart, was 'enacted in an effort to keep the course of justice free from the pollution of perjury.' *Id.*, quoting from *United States* v. *Williams*, 341 U.S. 58, 68 (1951)."

*Commonwealth* v. *Gurney*, 13 Mass. App. Ct. 391, 402 (1982).

*Judgment affirmed.*

---

period. . . . The falsity thus lay essentially in the particular assertion of a solemnization of marriage, which might enhance implications of economic stability and domesticity . . . and so in some measure strengthen [the defendant's] credibility." 15 Mass. App. Ct. at 580-581. "In the present case, when we consider the whole complex of the evidence, any relation of [the defendant's] assertion of official marriage to the drug jury's determination appears to rest so far in 'surmise, conjecture, or guesswork' (*Commonwealth* v. *Kelley*, 359 Mass. 77, 88 [1971]) that we think the question of materiality should properly have been withdrawn from the jury . . . ." *Commonwealth* v. *Mitchell, supra* at 581.