COMMONWEALTH vs. LUIS FIGUEROA.

Middlesex. October 2, 2012. - February 8, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Parole. Habitual offender. Practice, Criminal,* Parole, Required finding. *Words,* "Criminal proceeding."

This court concluded that it is a violation of G. L. c. 268, § 13B, for a parolee to mislead a parole officer who is investigating the parolee's possible failure to comply with parole conditions, where the Legislature intended to include such an investigation as a "criminal proceeding of any type" under the statute and to protect parole officers and those with information about violations of parole conditions from intimidation and misleading conduct during the course of such investigations. [367-371]

At the trial of an indictment charging misleading a parole officer with the intent to obstruct a criminal proceeding, in violation of G. L. c. 268, § 13B, there was sufficient evidence to support the defendant's conviction. [371-373]

INDICTMENTS found and returned in the Superior Court Department on July 1, 2008.

The cases were heard by *Raymond J. Brassard*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Andrew S. Crouch* for the defendant.

*Jamie Michael Charles*, Assistant District Attorney (*David Marc Solet*, Assistant District Attorney, with him) for the Commonwealth.

GANTS, J. The issue presented on appeal is whether it is a crime under G. L. c. 268, § 13B, as appearing in St. 2006, c. 48, § 3, for a parolee to mislead a parole officer who is investigating the parolee's possible failure to comply with parole conditions. We conclude that it is, and therefore affirm the defendant's convictions.

*Background.* In October, 2007, the defendant was on parole from his State prison sentence for armed robbery, and on proba-

tion for his conviction of rape of a child. Among the conditions of the defendant's parole were that he not go to areas where children under eighteen years of age would congregate, that he not enter into a relationship with someone who had children without informing his parole officer, that he wear a global positioning system (GPS) monitoring unit that recorded his whereabouts at all times, and that he keep a calendar recording where he went each day. On October 29, 2007, the defendant's parole officer, Kathryn Kozak, informed the defendant that he was not to leave his home in Marlborough after 6 P.M. on Halloween night, October 31, 2007, and was not to participate in any Halloween activities. On November 1, 2007, Kozak checked the defendant's GPS location from the previous night and determined that he had been to Framingham after 6 P.M. When she called him to ask why he had gone to Framingham, the defendant stated that he had taken a bus there to attend a meeting of Alcoholics Anonymous (AA). Kozak determined from GPS records that, while in Framingham, the defendant had been at an apartment complex two to three miles away from the location where he claimed he had attended the AA meeting. When his parole officer confronted him with this information, the defendant replied that there must have been "a glitch" in the GPS system. After this conversation, the defendant was placed in custody on a fifteen-day parole detainer. His parole was later revoked, and his probation terminated.

On July 1, 2008, the defendant was indicted for misleading a parole officer with the intent to obstruct a criminal proceeding, in violation of G. L. c. 268, § 13B; and for being a habitual criminal, in violation of G. L. c. 279, § 25. The defendant waived his right to a trial by jury, and was tried by a judge.

The evidence at trial revealed that in October, 2007, the defendant had a romantic relationship with Yudrey Millares, the mother of four young children, which he had failed to reveal to his parole officer. Millares often brought all four of her children with her to stay the night at the defendant's apartment in Marlborough. The defendant also occasionally visited Millares at her apartment in Framingham while her children were present. On the Halloween night at issue, the defendant came to Millares's apartment, joined Millares and her children in walking door to

door in her neighborhood trick-or-treating, and left in a taxicab. The defendant later told Millares that "he couldn't be out on that day," and instructed her to deny knowing him if anyone ever asked questions about him. At the defendant's request, Millares asked a friend to write a letter falsely claiming that the friend had cared for Millares's children on Halloween night, and sent the letter to the defendant's attorney.[1]

The judge denied the defendant's motion for a required finding of not guilty and found the defendant guilty of violating G. L. c. 268, § 13B. At a second bench trial, the judge found the defendant guilty of being a habitual offender under G. L. c. 279, § 25, and sentenced him, as required under § 25, to the maximum penalty under § 13B, a State prison term not to exceed ten years.[2]

*Discussion.* At the time of the alleged offense in 2007, G. L. c. 268, § 13B, as appearing in St. 2006, c. 48, § 3 (§ 13B), provided, in relevant part:

> "Whoever, directly or indirectly, willfully . . . (*c*) misleads, intimidates or harasses another person who is (i) a witness or potential witness at any stage of a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type; (ii) a person who is or was aware of information, records, documents or objects that relate to a violation of a criminal statute, or a violation of conditions of probation, parole or bail; (iii) a . . . probation officer or parole officer; [or] (iv) a person who is or was furthering a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type; . . . with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type shall be punished."[3]

The defendant claims that the judge erred in denying the motion

---

[1] Yudrey Millares testified pursuant to a grant of immunity.

[2] The judge ordered the sentence to be served concurrently with the sentence the defendant was serving for his probation violation.

[3] General Laws c. 268, § 13B (§ 13B), was twice amended in 2010, but the amendments do not bear on the issue on appeal. See St. 2010, c. 256, § 120; St. 2010, c. 92, § 11.

for a required finding of not guilty because § 13B makes it a crime to mislead a parole officer with the intent to obstruct a "criminal proceeding of any type," and there was no evidence of a "criminal proceeding" when the defendant made the misleading statements to his parole officer. Therefore, the question in this case is whether a parole officer's investigation into a potential violation of the conditions of a defendant's parole constitutes a "criminal proceeding of any type" within the meaning of the statute.

The phrase, "criminal proceeding of any type," is not defined in the statute, so we must look to our traditional principles of statutory interpretation to determine its meaning. Perhaps the most fundamental principle "is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). "Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction." *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 491 (2009). "If a sensible construction is available, we shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results." *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000).

In applying these principles, we note that § 13B was amended and rewritten in 2006 to expand the scope of the conduct prohibited, the classes of victims protected, and the types of criminal proceedings covered. See *Hrycenko* v. *Commonwealth*, 459 Mass. 503, 508 (2011); *Commonwealth* v. *Hamilton*, 459 Mass. 422, 435 (2011).[4] Although § 13B before the 2006 amendment protected only witnesses and jurors in a criminal investigation,

---

[4]Prior to the revision in 2006, the relevant provision of § 13B, as amended through St. 1996, c. 393, §§ 2-4, imposed criminal sanctions on those who:

"directly or indirectly, willfully endeavor[ed] by means of a gift, offer

or "in any stage of a trial, grand jury, or other criminal proceed-ing,"[5] § 13B after the 2006 amendment also specifically protected, among others, probation and parole officers in "a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type," as well as persons who are "aware of information, records, documents or objects that relate to a . . . violation of conditions of probation [or] parole." By adding provisions specifically protecting parole officers and those with information regarding a parole violation (who often are also parole officers), we discern a legislative intent to protect parole officers from intimidating or misleading conduct com-mitted with the intent to obstruct investigations into potential parole violations that may lead to the revocation of parole and the return of defendants to prison or jail. If a "criminal proceeding of any type" did not include such an investigation, then this legislative intent would be thwarted, and parole officers would not be protected from intimidation or misleading conduct in the type of investigations that they most commonly conduct. Because the statute before its 2006 revision already protected any "wit-ness or juror," we conclude that the specific inclusion of parole officers and those with information regarding a parole violation as protected classes of victims was intended to do more than protect these individuals as potentially testifying witnesses at a parole revocation hearing or a criminal trial.

The defendant seeks to distinguish matters of parole from "criminal proceeding[s]" by noting that a parolee alleged to

---

> or promise of anything of value, or by misrepresentation, intimidation, force or express or implied threats of force, to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or other criminal proceeding or with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth, and whoever injures any person or damages his property on account of the giving of such information to a criminal investigator or on account of testimony given at a trial, grand jury, or other criminal proceeding."

[5]See *Hrycenko* v. *Commonwealth*, 459 Mass. 503, 508 n.6 (2011) (prior to 2006, statute "only covered intimidation of a witness, juror, or person furnish-ing information to an investigator"); *Commonwealth* v. *Hamilton*, 459 Mass. 422, 433 (2011) ("prior to the 2006 amendment, § 13B . . . criminalized . . . interference, actual *or* threatened, with a witness or juror during the pendency of a criminal proceeding" [emphasis in original]).

have violated the conditions of his parole does not enjoy the full panoply of rights enjoyed by a criminal defendant. We acknowledge that the process due a parolee faced with revocation is less than that due a defendant faced with a criminal charge. See *Morrissey* v. *Brewer*, 408 U.S. 471, 480 (1972), citing *Mempa* v. *Rhay*, 389 U.S. 128 (1967). But we do not discern a legislative intent to limit the definition of a "criminal proceeding of any type" to proceedings that provide defendants with procedural rights equivalent to those provided to criminal defendants at trial. Section 13B expressly includes a "criminal investigation" and a "grand jury proceeding" as a type of "criminal proceeding" even though the subjects of criminal investigations have few procedural rights. We conclude that the Legislature meant to include within the rubric of "criminal proceeding[s] of any type" any investigation or proceeding that may result in criminal-type sanctions, such as loss of liberty, and note that a parolee under investigation for a parole violation may go to prison or jail after a parole revocation as surely as a defendant under criminal investigation or on trial may after a conviction.[6]

We have also considered whether the Legislature intended a "criminal proceeding" to commence in the context of parole revocation only after a formal allegation has been lodged of a

_____

[6]We acknowledge that a parole revocation "is not a stage of a criminal prosecution." *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 (1973). But we also affirm that, as amended in 2006, "§ 13B is directed at proceedings within the criminal justice system," *Commonwealth* v. *Gallant*, 453 Mass. 535, 542 (2009), and matters of parole are undoubtedly part of the criminal justice system. See *Commonwealth* v. *Pagan*, 445 Mass. 161, 168 (2005) ("We have made clear that parole is a form of punishment"); *Massachusetts Parole Bd.* v. *Brusgulis*, 403 Mass. 1010, 1011 (1989), citing *Morrissey* v. *Brewer*, 408 U.S. 471, 477 (1972) ("Parole constitutes a *variation* on imprisonment, . . . and not an unrestrained release from confinement" [emphasis in original]); *Hartford* v. *Hartford*, 60 Mass. App. Ct. 446, 453 (2004) (parole officer's "contacts with the parolee and the members of the community in which the parolee resides . . . are in the nature of an ongoing investigation"). We conclude that the Legislature in amending § 13B in 2006 must have intended to include some proceedings that were not a "stage of a criminal prosecution," *Gagnon* v. *Scarpelli, supra,* because § 13B as amended did not refer to any "stage" of a criminal proceeding, but to a "criminal proceeding of any type." See *Hrycenko* v. *Commonwealth, supra* at 509-510 & n.9 (specifically noting that " 'at any stage of a . . . proceeding' language in the 2006 statute applies only to witnesses or potential witnesses" under § 13B (1) (*c*) (i), and not to other classes of protected victims, including parole officers).

violation of parole. We note that § 13B protects anyone aware of information relating to a violation of conditions of parole and conclude that a "criminal proceeding" within the meaning of § 13B commences on the investigation of a possible parole violation, just as it commences on the investigation of a possible criminal violation.[7] For the above reasons, we conclude that the Legislature intended to include the investigation of a possible parole violation as a "criminal proceeding of any type" and to protect parole officers and those with information about violations of parole conditions from intimidation and misleading conduct during the course of such investigations.

Having determined that an investigation of a possible parole violation is a "criminal proceeding" within § 13B, we turn to the question whether the evidence was sufficient to support a finding that the defendant misled the parole officer. The word "misleads" is not defined in § 13B, and we have not before had the opportunity to define it. See *Commonwealth* v. *Fortuna*, 80 Mass. App. Ct. 45, 50-51 (2011) (first reported case involving prong of § 13B prohibiting one from wilfully misleading police officer with intent to impede criminal investigation). Under Federal law, the statute prohibiting witness tampering, 18 U.S.C. § 1512(b) (2006 & Supp. II 2008), punishes one who "engages in misleading conduct toward another person" with the intent, inter alia, to "influence, delay, or prevent the testimony of any person in an official proceeding," or "hinder, delay, or prevent" information from being communicated to a law enforcement officer or judge regarding the commission of a Federal

---

[7]Although 18 U.S.C. § 1001 (2006), the Federal statute punishing "materially false, fictitious, or fraudulent statement[s] or representation[s]" made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," covers a broader scope of proceedings than does § 13B, we note that several Federal Circuit Courts of Appeals have held that materially false statements made to parole officers by individuals on supervised release constitute criminal violations of this statute, even before a formal allegation of a parole violation has been brought. See, e.g., *United States* v. *Curtis*, 237 F.3d 598, 605 (6th Cir. 2001) ("false statements to a parole officer clearly fall within the scope of 18 U.S.C. § 1001"); *United States* v. *Lamberti*, 847 F.2d 1531, 1536 (11th Cir.), cert. denied, 488 U.S. 970 (1988) (overstatement of income to Parole Commission "impaired the Parole Commission's ability to determine whether [defendant] was fulfilling the conditions of parole," and this was "enough to trigger the prohibition of § 1001").

offense or a violation of the conditions of supervised release or parole.[8] The term "misleading conduct," as used in § 1512(b), is defined by statute as:

> "(A) knowingly making a false statement; (B) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement; (C) with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity; (D) with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or (E) knowingly using a trick, scheme, or device with intent to mislead."

18 U.S.C. § 1515(a)(3) (2006). In defining what it means to "mislead" another person under § 13B, we hereby adopt this definition of "misleading conduct."

Applying this definition, we conclude that the judge did not err in denying the defendant's motion for a required finding of not guilty. In reviewing such a denial, we ask "whether, viewing the evidence in the light most favorable to the Commonwealth, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' " (emphasis in original). *Commonwealth* v. *Perez*, 460 Mass. 683, 702 (2011), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). Where, as here, the parole officer was investigating a possible violation of her directive that the defendant remain home after 6 P.M. on Halloween to avoid congregating with children who were out trick-or-treating, there was abundant evidence for a rational trier of fact to conclude that the defendant misled his parole officer with the intent to obstruct her investigation. On being asked why he left his home, the defendant told his parole officer that he had attended an AA meeting in Framingham and that the GPS information reflecting that he had been in an apartment complex must have arisen from a

---

[8] We note that 18 U.S.C. § 1512(b) (2006 & Supp. II 2008), provides a narrower set of events that the defendant must intend to influence than the "criminal proceeding[s] of any type" referenced in G. L. c. 268, § 13B.

"glitch" in the GPS system. He intentionally concealed his visit to Millares's apartment and his trick-or-treating activities with her children. Where the defendant attempted to mislead his parole officer with the intent to obstruct her investigation of his possible violation of parole, it does not matter that he failed to succeed in misleading her. See *Commonwealth* v. *Rivera*, 76 Mass. App. Ct. 530, 535 (2010) (under § 13B, "[n]either before or after the amendment was it necessary to establish that the [prohibited conduct] was successful").

*Conclusion.* We affirm the defendant's convictions.

*So ordered.*