NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

23-P-395                                          Appeals Court

COMMONWEALTH  vs.  RENE MENDEZ.

No. 23-P-395.

Hampden.     January 8, 2024. - June 27, 2024.

Present:  Vuono, Wolohojian, & Toone, JJ.[1]


Unlawful Interference.  Intimidation of Witness.  Witness, Intimidation.  Perjury.  Evidence, Guilty plea.  Practice, Criminal, Plea.  Controlled Substances.



Indictments found and returned in the Superior Court Department on December 14, 2020.

The cases were heard by David M. Hodge, J.


Sean J. Gallagher for the defendant.
Travis H. Lynch, Assistant District Attorney (Kerry L. Koehler, Assistant District Attorney, also present) for the Commonwealth.


VUONO, J.  The charges in this case, willful interference

with a criminal investigation (two counts), in violation of

_____

[1] Justice Wolohojian participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

G. L. c. 268, § 13B, and perjury, in violation of G. L. c. 268, § 1, arose from unusual circumstances. As we discuss in more detail below, the defendant waived indictment and pleaded guilty to a district attorney's complaint charging him with trafficking heroin. The complaint alleged that the offense occurred on November 12, 2015, in Springfield. However, unbeknownst to the Commonwealth at the time of the defendant's plea, the defendant's admissions regarding the crime were false. This fact came to light when the defendant filed a motion to withdraw his guilty plea in which he claimed that he was innocent and had been coerced into pleading guilty to protect his nephew, Matthew Oquendo, who was facing trafficking and firearm offenses stemming from the same investigation. The defendant also asserted that he was in custody on November 12, 2015, in connection with an unrelated charge, and, consequently, he could not have committed the crime in the manner alleged. Ultimately, the defendant's trafficking conviction was vacated, and the defendant was charged with the offenses described above based on the false representations he made during the course of the investigation and his plea hearing. Following a jury-waived trial, the defendant was found guilty on all counts. The question raised on appeal is whether the Commonwealth's evidence was sufficient to support the convictions beyond a reasonable doubt. We affirm.

Background.  During the evening of November 11, 2015, Sergeant Robert Wise of the West Springfield police department was investigating a report of criminal activity at the Central Chevrolet dealership located on Memorial Avenue when he encountered the defendant and arrested him for breaking into motor vehicles and related offenses.  The defendant was held overnight and transported to the District Court in Springfield the following day, November 12, 2015.  Due to a prior pending criminal complaint, the defendant was held without the right to bail and placed in the custody of the Hampden County sheriff's department.  The record does not disclose when the defendant was released from custody, but there is no dispute that he was being held in the house of correction throughout the events that transpired in connection with the execution of a search warrant on November 12, 2015, by members of the Drug Enforcement Administration and the Western Massachusetts Gang Task Force (collectively, the "task force").  We now turn to those events, which we recount only to the extent necessary for our discussion.

In the fall of 2015, Oquendo became a target of a drug investigation conducted by the task force.  In connection with that investigation, the task force obtained a search warrant for a house located at 23 Silver Street in Springfield.  The warrant was executed between five and six in the evening.  Oquendo and

another individual, not the defendant, were in the house and arrested.  The police found thousands of bags of heroin packaged for sale and three firearms.  Oquendo was subsequently indicted for trafficking over 200 grams of heroin and possession of a firearm during the commission of a felony (three counts) on December 17, 2015.

The prosecution of the case against Oquendo was assigned to assistant district attorney Christopher McDonald.  At some point after Oquendo was indicted, Oquendo's attorney approached McDonald and informed him "that there would be an individual willing to take responsibility."  That person was the defendant.  McDonald then drafted a proffer agreement and sent it to the defendant's attorney, who arranged for the defendant to meet with Special Agent John McGrath, who was a member of the task force and involved in the investigation of Oquendo.  That meeting was held on March 9, 2018, at the office of the Drug Enforcement Administration in Springfield.

Up to that point, McGrath did not know of any connection between the defendant and the investigation.  At trial, McGrath was asked during direct examination whether the defendant's name "[came] up at all during the course of the investigation," to which he replied, "No."  McGrath also testified that he did not know that the defendant and Oquendo were related.  He explained that he first became aware of the defendant's claim that he was

the owner of the drugs in question when McDonald contacted him and asked him to speak with the defendant. The meeting was brief. The defendant told McGrath that the drugs were his and that he was present at the house on November 12 and "had gone out the back door" prior to the arrival of law enforcement agents. McGrath then relayed the information to McDonald and opined, "I couldn't say [the defendant] wasn't telling the truth." McGrath had no further involvement in the case and had retired by the time he testified at trial.

Almost one year after the defendant met with McGrath, the defendant and Oquendo reached a plea deal with McDonald. The defendant agreed to waive indictment and plead guilty to trafficking between thirty-six and one hundred grams of heroin pursuant to a district attorney's complaint. McDonald and the defendant further agreed to jointly recommend a five- to six-year State prison sentence. The terms of Oquendo's plea agreement were far more favorable. Oquendo agreed to plead guilty to the lesser included offense of possession with intent to distribute heroin after which McDonald would file a nolle prosequi with respect to all three firearm offenses. McDonald agreed to recommend a sentence of two and one-half years to the house of correction, one year to be served, with the balance suspended.

The pleas went forward as planned at a joint hearing on February 20, 2019.  At the beginning of the hearing, the defendant waived his right to an indictment.  Then, after some preliminary discussion regarding sentence recommendations, McDonald informed the judge that Oquendo's plea was "contingent on Mr. Mendez's plea."  The defendant and Oquendo were placed under oath and, despite the contingency, the pleas were conducted simultaneously.  McDonald recited the facts the Commonwealth would have proven at trial as follows:

> "Your Honor, back in October of 2015, Springfield Police started receiving information that 23 Silver Street in Springfield was housing a large amount of heroin.  On November 12th, they applied for a search warrant.  On that day, when they set up on the house, they observed Mr. Oquendo arrive in a Honda vehicle and go into the house.  They then executed the search warrant.  Just prior to executing [the] search warrant, Mr. Mendez had left out the back door and was not present during the execution of the warrant itself.  They found Mr. Oquendo in the second floor bedroom.  In the house, they located large amounts of heroin, in the vehicle as well, about 1400 bags of heroin, totally around 21,000 bags total in the house.
>
> "This was essentially a stash house, with Mr. Mendez being a princip[al] owner of the narcotics that were found.  However, Mr. Oquendo did have constructive possession over them with the ability and intent to exercise control over them if buyers were to arrive.
>
> "These drugs were tested at the [S]tate lab here in Springfield by Kelsey Medeiros, confirmed to be heroin and confirmed to be over [thirty-six] grams."

Both the defendant and Oquendo agreed that those facts were true.  Specifically, the judge asked the defendant:

The judge:  "Mr. Mendez, did you hear the facts that were just recited by the prosecutor?"

Mr. mendez:  "I did, Your Honor."

The judge:  "At least as to your involvement and charges against you, do you agree that those facts are true?"

Mr. mendez:  "I agree, Your Honor."

At the conclusion of the hearing, the judge accepted the pleas and imposed the agreed upon sentence of five to six years in prison on the defendant.  With respect to Oquendo, the judge adopted defense counsel's recommendation and imposed a more lenient sentence than the prosecutor had recommended:  two and one-half years to the house of correction, thirty days to be served, with the balance suspended for two years.[2]  As promised, McDonald then filed a nolle prosequi on the remaining charges against Oquendo.

At trial, McDonald testified that he would not have charged the defendant in the absence of his admission that he owned the heroin.  He further explained that the "sole reason" for agreeing to the plea deal with Oquendo, who was facing a twelve-year mandatory minimum sentence on the trafficking charge alone, was the fact that the defendant came forward and claimed ownership of the heroin.

---

[2] It appears from the transcript that the entire proceeding was conducted in fifteen minutes or less.

Shortly after the plea hearing, the defendant began serving his sentence.[3] However, within a year, on December 23, 2019, he filed a pro se motion entitled "Motion for notice to the court," in which he claimed he was serving an "illegal sentence." The motion was supported by an affidavit in which the defendant averred that he was "coerced . . . to plead[ing] guilty" by his attorney and that he "was never involved in the November 12, 2015, case for trafficking in Heroin with his nephew Matthew Oquendo." In the motion, the defendant claimed that he discussed a possible plea deal that would help his nephew at a meeting with his attorney and Oquendo's attorney and then under a "false preten[s]e" he went to court and pleaded guilty "to a crime that never happen[ed]." The defendant's motion was brought to the attention of the judge who presided over the two pleas. In a margin endorsement, the judge corrected certain errors in the docket and mittimus but took no action regarding the merits of the motion.

Six months later, on June 5, 2020, the defendant filed a second pro se motion challenging his guilty plea. This motion, which was properly captioned as, "Motion to withdraw guilty plea," was more detailed than the prior motion although the

---

[3] The defendant requested and was granted permission to self-surrender thirty days after the imposition of the sentence.

substance was the same.[4]  The defendant again alleged that he had not committed the crime of trafficking and that he pleaded guilty to help his nephew avoid prison.  Among the new details, however, was one significant disclosure.  For the first time, the defendant asserted that he could not have committed the crime because he "was incarcerated on the night his nephew . . . was arrested on November 12, 2015."  According to the defendant, the "agreed plea was false from beginning to end."[5]  This motion also was brought to the attention of the plea judge, who ordered the Commonwealth to respond within sixty days.

That response, if there was one, has not been provided to us.  Regardless, the Commonwealth, now alerted for the first time that the defendant had been in custody on November 12, 2015,[6] responded first by obtaining the indictments at issue in this appeal, and second by filing a motion to vacate the defendant's guilty plea to trafficking heroin.  The Commonwealth

---

[4] Several exhibits, including a copy of the search warrant application and supporting affidavit, were attached to the motion.

[5] Two months later, on August 13, 2020, the defendant filed a motion to withdraw his motion to withdraw his guilty plea, claiming that he had "reconsidered his position on this matter and feels that it is in his best interest to withdraw his motion at this time."  Nothing in the record explains why the defendant changed tack at this point.

[6] At trial, McDonald testified that he first learned that the defendant was incarcerated on November 12, 2015, when the defendant filed his motion to withdraw his plea.

then entered a nolle prosequi on the district attorney's complaint. As previously noted, the defendant was convicted of willful interference with a criminal investigation and perjury, and this appeal ensued.

Discussion. In reviewing a claim challenging the sufficiency of the evidence, we ask whether, viewing the evidence in the light most favorable to the Commonwealth, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). In this case, we answer that question affirmatively with respect to all three convictions.

1. G. L. c. 268, § 13B. The defendant was charged with two counts of violating G. L. c. 268, § 13B, generally known as the witness intimidation statute. As relevant here, the statute makes it criminal to willfully mislead an investigator or an attorney directly or indirectly with the intent to interfere, impede, or obstruct a criminal investigation or criminal proceeding of any type. See Commonwealth v. Fortuna, 80 Mass. App. Ct. 45, 51 (2011). The indictment charged in count one that the defendant willfully misled John McGrath, "a police officer or investigator," and, in count two, that the defendant willfully misled Christopher McDonald, "an attorney."

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient with respect to both counts. A rational trier of fact, here the judge, reasonably could have found that the defendant misled McGrath and McDonald with the requisite intent when he falsely claimed that he owned the heroin in question and that he was present at the house where the drugs were found prior to the execution of the search warrant. Furthermore, it was reasonable to conclude that the defendant's lie interfered with a criminal investigation and a criminal proceeding because it induced the Commonwealth to charge the defendant with the crime of trafficking and to offer Oquendo a more favorable plea agreement than it otherwise would have.

With respect to count one (misleading McGrath), the defendant argues that the Commonwealth's evidence was insufficient because the criminal investigation into Oquendo's illegal distribution of heroin had concluded by the time he claimed ownership of the drugs during his proffer with McGrath. This argument is unavailing. First, viewing the evidence in the light most favorable to the Commonwealth, as we must, the judge reasonably could have found that the investigation was ongoing and, if anything, was reinvigorated when the defendant came forward and told McGrath that the heroin found during the execution of the search warrant belonged to him. Second, even were we to agree, which we do not, that the investigation had

concluded, the statute is not limited to prohibiting conduct that impedes or interferes with an active investigation. To the contrary, our case law has interpreted the "statute to encompass 'any investigation or proceeding that may result in criminal-type sanctions.'" Commonwealth v. Occhiuto, 88 Mass. App. Ct. 489, 505 (2015), quoting Commonwealth v. Figueroa, 464 Mass. 365, 370 (2013). This "expansive definition" does not require the Commonwealth "to prove the exact nature [or stage] of the criminal proceedings" (citation omitted). Occhiuto, supra. Indeed, as we explained in Occhiuto, "the investigation need not have been commenced at the time of the defendant's statements, nor need it be pending" (citations omitted). Id.

The defendant further argues that, even if the criminal investigation was active at the time he came forward, the Commonwealth still fell short of meeting its burden of proof because his conduct did not mislead McGrath. Although, as the defendant notes, McGrath was skeptical of his claim, and there was no evidence that McGrath embarked on a so-called "wild goose chase," neither circumstance diminished the sufficiency of the Commonwealth's evidence. It matters not that McGrath was unsure whether the defendant was telling the truth or that he did nothing other than relate the information the defendant had provided to McDonald because the Commonwealth was not required to prove that McGrath believed in or acted upon the false

information.  Instead, the Commonwealth was required to prove
that "the defendant's alleged statement[] . . . reasonably could
have led police astray."  Commonwealth v. Paquette, 475 Mass.
793, 800 (2016).

Here, the evidence established beyond a reasonable doubt
that the defendant's statements regarding ownership of the
heroin and his presence at the stash house shortly before the
execution of the search warrant were false.  Those false
statements reasonably could have led McGrath and other members
of the task force to pursue a materially different course of
action.  That McGrath himself took no further action after
interviewing the defendant is of no consequence, where, as here,
there was also sufficient proof of the defendant's intent to
interfere with the investigation.  See, for example, Figueroa,
464 Mass. at 372-373, where the Supreme Judicial Court affirmed
a defendant's conviction under § 13B even though the defendant's
attempt to mislead his parole officer with a false alibi was
unsuccessful.  See also Commonwealth v. Casiano, 70 Mass. App.
Ct. 705, 709 (2007), quoting Commonwealth v. Robinson, 444 Mass.
102, 109 (2005) ("[t]he statute punishes anyone who 'willfully
endeavors' to intimidate a witness; it does not require that the
intimidation be successful").

Lastly, the defendant argues that the Commonwealth's
evidence with respect to the conviction on count two (misleading

McDonald) was insufficient because McDonald is not an investigator, and the plea hearing, which the defendant acknowledges is a criminal proceeding that falls within the statute, "went smoothly."  These arguments require little discussion.  First, the indictment specifies that McDonald is an attorney, and attorneys are persons specifically included within the statute.  Second, the fact that the plea hearing went forward "smoothly" misses the point, which is that, but for the defendant's false statement, Oquendo's plea agreement would never have been tendered in the first place.

2.  G. L. c. 268, § 1.  "The crime of perjury in a judicial proceeding occurs whenever one 'willfully swears or affirms falsely in a matter material to the issue or point in question.'"  Commonwealth v. Walters, 472 Mass. 680, 702 (2015), quoting Commonwealth v. Geromini, 357 Mass. 61, 63 (1970).  See G. L. c. 268, § 1.  "Our case law instructs that a false statement is material if it 'tend[s] in reasonable degree to affect some aspect or result of the inquiry'" (citations omitted).  Commonwealth v. White, 70 Mass. App. Ct. 71, 73 (2007).

The perjury charge was based on the defendant's representation at the plea hearing that the facts recited by McDonald regarding his involvement in the crime were true.  The defendant argues that the Commonwealth failed to prove that his

replies to the judge's questions were false or material and, therefore, the judge erred in denying his motion for a required finding of not guilty. We disagree.

As we have previously concluded, there was abundant evidence from which the judge as the trier of fact could conclude beyond a reasonable doubt that the defendant falsely affirmed that McDonald's recitation of the facts was true. The defendant subsequently admitted in an affidavit that he had no involvement in Oquendo's drug distribution scheme and, in fact, was not present at the house where the heroin was found on November 12, 2015. In addition, the untruthfulness of the defendant's responses at the plea hearing were corroborated by evidence that unequivocally established the defendant was in police custody on November 12, 2015. Furthermore, the defendant's false answers were undeniably material as they were the basis upon which the judge accepted his guilty plea.

Nor are we persuaded by the defendant's assertion that this evidence is in "equipoise" and, as a result, is insufficient. While the defendant is correct that a judge must grant a motion for a required finding of not guilty where "the evidence tends equally to sustain either of two inconsistent propositions," Commonwealth v. Tavares, 484 Mass. 650, 654-655 (2020), that is not the case here. Based on the evidence that the defendant was in police custody on November 12, 2015, and had a motive for

lying, namely, to spare his nephew from a prison sentence, the judge could reasonably conclude beyond a reasonable doubt that the defendant's post-conviction statements recanting ownership of the drugs were true and his earlier statements were false.

The defendant also challenges his conviction of perjury on the ground that his plea of guilty was void ab initio.  Without a valid plea, he argues, the perjury conviction cannot stand. Specifically, the defendant claims that because there was no judicial determination of probable cause before the district attorney's complaint was filed and he was not arraigned on the complaint, we should declare the plea void.  We decline to do so.  The defendant waived any nonjurisdictional defects in the proceedings by virtue of pleading guilty.  See Commonwealth v. Cabrera, 449 Mass. 825, 830 (2007).  Moreover, although it was brief, the judge's colloquy with the defendant at the beginning of the plea hearing demonstrated a clear waiver of the right to be indicted by a grand jury upon a finding of probable cause and an implicit waiver of the right to a formal arraignment.

Judgments affirmed.