## Commonwealth *vs.* Patrick Fortuna.

No. 10-P-185.

Suffolk. April 1, 2011. - August 9, 2011.

Present: Wolohojian, Milkey, & Hanlon, JJ.

*Unlawful Interference. Practice, Criminal,* False report, Motion to suppress, Required Finding, Instructions to jury, Assistance of counsel, Argument by prosecutor, Duplicative convictions. *Search and Seizure,* Plain view. *Constitutional Law,* Search and seizure.

A Boston Municipal Court judge properly denied a criminal defendant's pretrial motion to suppress items of his clothing that were seized by police after they had been cut off and removed from the defendant by hospital personnel while he was being treated for a gunshot wound, where the defendant had no expectation of privacy in the items examined, and therefore no search took place in the constitutional sense [48]; and where, given that the police discovered the incriminating evidence in a constitutionally permissible manner, the police were justified in seizing the evidence under the plain view doctrine [48-49].

At the trial of a criminal complaint charging misleading a police officer with intent to impede an investigation, there was sufficient evidence to sustain the defendant's conviction, where, in light of the inconsistency between the defendant's account of his having been shot at from a distance and expert testimony that he was shot at from a distance of no more than one and one-half feet, the jury could have inferred that the defendant lied to the police, intentionally and with the intent to mislead them, and where the defendant's statements to the initial police officer on the scene actually misled him (i.e., in reliance on the defendant's account, the officer and others, including a canine unit, searched for ballistics evidence in the area from where the purported drive-by shooting occurred). [49-51]

Discussion of the crime of intentionally making a false report of a crime, in violation of G. L. c. 269, § 13A. [51-53]

At the trial of a criminal complaint charging intentionally making a false report of a crime, there was sufficient evidence to sustain the defendant's conviction, where the jury reasonably could have determined that the defendant's accounting of how he was shot was substantially inaccurate under either possible scenario, i.e., whether the defendant was trying to cover up the circumstances of how a third party shot him or whether he shot himself and was trying to cover up a firearm-related violation. [53-54]

At a criminal trial, no substantial risk of a miscarriage of justice arose from an erroneous jury instruction that they could convict the defendant under G. L. c. 268, § 13B, for a mere effort or attempt to mislead or influence or

interfere with a criminal investigation, where the error did not affect the defendant's strategy (i.e., to establish that the defendant told the truth), and where there was robust evidence that the defendant actually did mislead a police officer, as well as ample evidence that the defendant took actions that would have misled a reasonable person or police officer. [54]

At a criminal trial, defense counsel's failure to request a specific unanimity instruction did not amount to ineffective assistance. [54-55]

There was no merit to a criminal defendant's argument that the prosecutor, in closing argument, misstated certain testimony. [55]

There was no merit to a criminal defendant's claim that his convictions of making a false report of a crime, in violation of G. L. c. 269, § 13A, and misleading an investigation, in violation of G. L. c. 268, § 13B, were duplicative. [55-56]

COMPLAINT received and sworn to in the West Roxbury Division of the Boston Municipal Court Department on November 20, 2008.

A pretrial motion to suppress evidence was heard by *Ernest L. Sarason, Jr.,* J., and the case was tried before *Kathleen E. Coffey,* J.

*Jeremy Cohn* for the defendant.

*Kathleen Celio,* Assistant District Attorney (*Lauren Bernath Moore,* Assistant District Attorney, with her) for the Commonwealth.

MILKEY, J. After he sustained a gunshot wound, the defendant spoke with police officers who were investigating the shooting. Based on his statements to them, he was convicted, after a jury trial in Boston Municipal Court, of misleading a police officer with intent to impede or interfere with an investigation, G. L. c. 268, § 13B, and making a false report of a crime, G. L. c. 269, § 13A. On appeal, he argues that his motion to suppress evidence seized from him in the hospital should have been granted. He also asserts that the evidence presented at trial was insufficient to support either conviction, and he makes several additional arguments. We affirm.

*Motion to suppress.* "In reviewing the denial of a motion to suppress, we accept the judge's findings of fact absent clear error." *Commonwealth* v. *Mubdi,* 456 Mass. 385, 388 (2010), quoting from *Commonwealth* v. *Damian D.,* 434 Mass. 725, 726 (2001). We begin by summarizing those findings.

On November 18, 2008, a Boston police detective responded

to Brigham and Women's Hospital after receiving a report that a gunshot victim was en route there. See G. L. c. 112, § 12A, as amended through St. 1998, c. 358, § 2 (requiring hospitals to report gunshot victims to police "at once"). Hospital security allowed the detective into the emergency department, where he found the defendant being treated by hospital personnel. The defendant had a gunshot wound in his lower calf or ankle area, and hospital personnel were cutting off his clothing (including pants and long underwear), a portion of which had been removed before the detective arrived. As the nurses and physicians were treating the defendant, the detective interviewed him about the shooting. The defendant said he had been shot while he was walking home, but that he did not know by whom or how, and that the shooter was far away. The detective then left to retrieve a camera from his vehicle, and when he returned, he photographed the wound. Upon observation of the defendant's clothing, the detective noticed black soot or gunshot residue around the wound and on the clothing. Based on his experience — he was a thirty-four-year veteran of the police force, including ten years as a detective in the firearms unit — he concluded that the shooter had to have been in very close proximity to the defendant, or that the wound was self-inflicted. He confronted the defendant, pointing out the soot on his clothes and saying that he did not believe his account of the shooting. The defendant became agitated and told the detective to "go fuck yourself."

Meanwhile, hospital personnel had begun to place the defendant's clothes in a bag and offered it to the detective, who accepted it.[1] The detective asked that each article of clothing — the defendant's soiled, cut-up pants, long underwear, socks, a sandal, and other clothing — be placed in separate paper bags to prevent contamination, and he assisted in this process. The detective did not have a warrant to seize the clothing, and the defendant neither expressly consented nor objected to the seizure.

The motion judge denied the defendant's motion to suppress, ruling that the seizure of the clothing was justified under the plain view doctrine. He concluded that the detective had a right to be in the emergency room cubicle and to access the defend-

---

[1]According to the detective, it was "policy" for hospital personnel to turn over clothing of gunshot wound victims for investigative purposes.

ant's clothing because he was acting pursuant to his investigative duties and because the defendant had no reasonable expectation of privacy. The judge further concluded that the detective's discovery of the soot on the clothing was inadvertent and that its connection to the crime of the unlawful shooting justified its seizure.

We begin by observing that the defendant expressly agreed below with the motion judge that he had "no expectation of privacy . . . in clothing that's been ripped off him as he's receiving medical attention." With the defendant having no expectation of privacy in the items the detective examined, there was no search in the constitutional sense. See *Commonwealth* v. *Bly*, 448 Mass. 473, 490 (2007), citing *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991) (defendant must have subjective expectation of privacy for "search" or "seizure" to occur). The defendant's arguments that the extent of the search exceeded the contours of the plain view doctrine are therefore unavailing.

On appeal, the defendant seeks to resurrect a claim of privacy by citing to the statute known as "the patients' or residents' bill of rights," G. L. c. 111, § 70E.[2] According to him, this statute provided him a statutorily-protected expectation of privacy that the detective violated. Because the defendant did not raise this theory at the suppression hearing below, however, he has waived it. See *Commonwealth* v. *Johnston*, 60 Mass. App. Ct. 13, 17-21 (2003), and cases cited.[3]

That leaves the defendant to argue that even if the detective was properly in his cubicle in the emergency room and even if there was no search of his clothing in a constitutional sense, the

---

[2]This statute provides, among other things, that every hospital patient shall have "the right . . . to privacy during medical treatment . . . ." G. L. c. 111, § 70E, inserted by St. 1979, c. 214.

[3]Even were it open to us to review whether the police so intruded into statutorily-created privacy expectations that this created a substantial risk that justice miscarried, compare *Commonwealth* v. *Sawyer*, 389 Mass. 686, 692 (1983), we would discern no such risk here. When the detective arrived to investigate the shooting, the defendant was only the apparent victim of a crime, and he was — from all appearances — freely cooperating with the investigation. Under these circumstances, the defendant is hard pressed to show how the detective acted inconsistently with whatever privacy rights the patients' bill of rights created.

subsequent seizure of that clothing was invalid.[4] For purposes of our analysis, we assume that the defendant neither abandoned his clothes nor consented to the police's taking of them. Compare *Commonwealth* v. *Bly*, 448 Mass. at 490-491 (where the defendant had abandoned the evidence [a used water bottle and cigarette butts], "no search or seizure occurred"), with *Commonwealth* v. *Williams*, 76 Mass. App. Ct. 489, 490-493 (2010) (patient did not forfeit his possessory interest in clothing bagged by hospital personnel to safeguard it). But by the time the detective seized the clothing, the detective had come to appreciate its incriminating nature (not only as evidence of the shooting, but also as evidence of the defendant's misleading police). With the police having discovered this incriminating evidence in a constitutionally permissible manner, they were justified in seizing the evidence under the plain view doctrine. *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. 300, 306-308 (2010).[5] In sum, we conclude that the motion judge properly denied the motion to suppress.[6]

*Sufficiency of the evidence.* The defendant argues that his

[4]The Commonwealth argues that the seizure of the clothing did not involve State action. However, the Commonwealth expressly waived that argument below, and the detective was in any event directly involved in the examination and seizure of the clothing.

[5]To the extent that the "inadvertence" requirement applies, the discovery of the soot on the clothing was plainly unexpected, and it is this evidence that led to the defendant's conviction. Compare *Commonwealth* v. *Balicki*, 436 Mass. 1, 9-10 (2002) (where police are executing a search warrant, discovery of evidence not listed in the warrant must be inadvertent; if police had probable cause to believe they would find the evidence, they must include it in the search warrant application). While it is true that the detective expected to find evidence of the shooting when he arrived at the hospital, he had no obligation to get a search warrant before coming to a neutral location to interview the apparent victim.

[6]*Commonwealth* v. *Williams*, *supra*, is not to the contrary. There, the defendant was admitted to the hospital for a stab wound. Over the defendant's protests, police seized the defendant's clothing, which had been bagged by hospital personnel. When a detective later examined the clothing, a hidden plastic bag containing "crack" cocaine fell from the clothes. The Commonwealth argued that the defendant had no possessory interest in the clothes (and therefore that the warrant requirement did not apply). We found that the defendant never forfeited his possessory rights in the clothes; the hospital placed his clothes in bags to safeguard his effects and never became a joint owner of them simply by virtue of the defendant's presence in the hospital. The court did not address the application of the plain view doctrine.

motion for a required finding should have been granted as to both counts. Applying the familiar standard set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), we conclude that the jury could have found the following facts.

On November 18, 2008, a Boston police officer received a radio dispatch that a man had been shot in Hyde Park. The officer arrived and found the defendant bleeding from a wound near his foot. The defendant told the officer that while he was walking from his house to a local store, he was shot by an unknown person in an unknown car, which then drove off. The officer cordoned off the area of the shooting, called in a canine unit to search for ballistics evidence, and he and other officers also searched the area for evidence. He called an ambulance for the defendant, who was taken to the hospital. The detective who interviewed the defendant in the hospital testified at trial, and his testimony there was consistent with that from the suppression hearing (although more specific about the defendant's account of the shooting). He said the defendant told him the shot came from a considerable distance, possibly from a bridge that crossed over the street, and that no person or car was near him. The Commonwealth also called a forensics expert from the Boston police crime lab. She testified that based on her chemical testing of the gunshot residue on the defendant's pants, he was shot from a maximum distance of eighteen inches.[7] We proceed to review his sufficiency arguments in turn.

1. *Misleading an officer with intent to impede an investigation.* Section 13B of G. L. c. 268 criminalizes a number of actions that interfere with the operation of the criminal justice system. There is a good deal of case law regarding some aspects of the statute, such as those that prohibit the intimidation of witnesses, jurors, or judicial officers. See, e.g., *Commonwealth* v. *Hamilton*, 459 Mass. 422, 431-437 (2011) (intimidation of probation officer); *Hrycenko* v. *Commonwealth*, 459 Mass. 503 (2011) (judge); *Commonwealth* v. *Rivera*, 76 Mass. App. Ct. 530 (2010) (witness). There do not appear to be any reported cases on the prong of the statute at issue in this case, prohibiting one from

---

[7]The defendant took the stand as the only witness for the defense, but, because he does not argue that the Commonwealth's case deteriorated, his testimony is not relevant to our sufficiency analysis.

wilfully misleading a police officer with the intent to impede a criminal investigation.

As relevant here, under the plain language of the statute, the defendant must have (1) wilfully (2) misled (3) a person furthering a criminal investigation (4) with the intent to impede or obstruct an investigation. G. L. c. 268, § 13B, as appearing in St. 2006, c. 48, § 3. In light of the inconsistency between the defendant's account and expert testimony that he was shot at from a distance of no more than one and one-half feet away, the jury could have inferred that the defendant lied to the police and that he did so both intentionally and with the intent to mislead them.[8] The defendant argues that he can be convicted of such a violation only if his statements to police actually mislead them, while the Commonwealth suggests that the test should be an objective standard whether the statements would have misled a reasonable officer who heard them.[9] We need not resolve this issue, because the statements that the defendant made to the initial officer on the scene were not only sufficient to mislead a reasonable person in his position,[10] they did in fact mislead him. In reliance on the defendant's account, the officer and others (including a canine unit) searched for ballistics evidence in the area from where the purported drive-by shooting occurred.

2. *Intentionally making a false report of a crime.* The defendant also argues that the evidence was insufficient, as matter of

---

[8]Contrary to the defendant's claim, the jury could reasonably have inferred that the defendant sought to interfere with the investigation without the Commonwealth's having supplied a specific motive for his doing so. See *Commonwealth* v. *Kappler*, 416 Mass. 574, 579 n.3 (1993) ("The Commonwealth need not prove motive").

[9]Cf. *Commonwealth* v. *Rivera*, 76 Mass. App. Ct. at 532-535 (witness does not actually have to be intimidated under § 13B; test is whether defendant's acts or words would intimidate a reasonable person). As we noted there, in the 2006 overhaul of § 13B, the Legislature's "purpose and effect . . . was . . . to expand the scope of the statute to address heightened concerns" about gang-related interference with criminal investigations. *Id.* at 534. Requiring that the defendant have actually intimidated a witness "would narrow [the statute's] application and undermine its over-all purpose." *Ibid.*

[10]This is true regardless of whether a "reasonable police officer" or "reasonable person" standard is employed. See *Commonwealth* v. *Casiano*, 70 Mass. App. Ct. 705, 709 (2007) (leaving unresolved whether intimidation of a police officer witness mandated reasonable officer or reasonable person standard under prior version of statute).

law, to convict him of violating G. L. c. 269, § 13A, inserted by St. 1982, c. 219. That section makes it a crime for one intentionally and knowingly to make, or cause to be made, a "false report of a crime." There is a dearth of case law that fleshes out what it means to make a false report of a crime.[11] To discern the Legislature's intent, we turn again to the language of the statute.

As an initial matter, the defendant argues that he could not reasonably be said to have made a false report of a crime where he was merely responding to police inquiries. According to him, only one who initiates contact with the police could be said to have made a "report" of a crime. We disagree. In our view, whether there was a crime should turn on the substance of the misinformation the defendant provided to the police, not on which party initiated the dialogue. Contrast *State* v. *Ahitow*, 544 N.W.2d 270, 273 (Iowa 1996) (interpreting a similar State statute as requiring that the defendant initiate contact with the police).

However, we also disagree with the Commonwealth's suggestion that the statute serves to criminalize the telling of any untruth to police that happens to be related to a crime. Notably, the statute does not speak in terms of making false statements to a police officer.[12] The particular phrasing that the Legislature chose suggests that the speaker's "report of" a crime itself has to be "false." In our view, this phrasing implies that the false statements at issue need to cross a certain threshold of materiality. That is, we believe that to violate the statute, the defendant has to have made a substantially inaccurate accounting of a crime, not just have reported some untrue detail related to it.

---

[11]The cases on occasion have cited the existence of the statute as a reason to credit the reliability of an out-of-court statement by a third-party witness. See, e.g., *Commonwealth* v. *Costa*, 448 Mass. 510, 516 & n.10 (2007) (identified informants are more reliable because they are subject to § 13A). However, neither party has identified any reported case that discusses what specific actions are needed to violate the statute.

[12]Compare G. L. c. 18, § 5B (criminalizing "knowingly mak[ing] a false representation . . . affecting eligibility or level of benefits to the department of public welfare"); G. L. c. 268, § 39, inserted by St. 1981, c. 795, § 13 (criminalizing "knowingly mak[ing] a false written statement on a form bearing notice that false statements made therein are punishable under the penalty of perjury, to a police officer, police department or the registry of motor vehicles alleging the theft or conversion of a motor vehicle").

Compare *People* v. *Chavis*, 468 Mich. 84, 91-94 (2003) (defendant who provided false details of a crime found guilty of making false report of a crime).

The most obvious way to make a "false report of a crime" would be to report a crime that the speaker knew had never occurred. But we do not view the statute as limited to such circumstances. For example, we believe that someone could readily be said to have made a false report of a crime where, in reference to a crime that actually occurred, he intentionally misidentified the perpetrator.[13]

Returning to the facts of this case, we note that although the jury readily could have concluded that the defendant was lying to police, the scarcity of evidence as to how the shooting really occurred renders it difficult to determine the manner and extent to which the defendant's accounting of the event was false. Most significantly, it is impossible to tell on the evidence presented whether the defendant was trying to cover up the circumstances of how a third party shot him (e.g., to mask the identity of the shooter), or whether the defendant instead shot himself and was trying to cover up a firearm-related violation. Nevertheless, we conclude that the jury reasonably could have determined that the defendant's accounting of what occurred was substantially inaccurate under either scenario. If the defendant in fact accidently shot himself, then by telling police that a third party shot him, the defendant reported a crime that never occurred. If, on the other hand, a third party in fact shot him, the defendant's accounting of how that occurred (a shot fired from a considerable distance) was still sufficiently at variance with what actually occurred (a shot fired from a very close distance) that a jury could have concluded that it amounted to a false report of a crime. Thus, we believe the jury could reasonably have convicted him of falsely reporting a crime without

---

[13]The Commonwealth suggests that the "report" referenced in the statute could be the written report prepared by police, so that one can violate the statute by causing the police to generate false statements in their own report of the crime. To our mind, it makes little sense for the question whether the defendant's actions constitute a crime to turn on the happenstance of whether or how the police commit the report to writing. Compare G. L. c. 268, § 6A (making it a crime for "an officer or employee of the commonwealth or of any political subdivision thereof" to knowingly file a false written report).

knowing what really happened.[14] See *Commonwealth* v. *Fernandez*, 48 Mass. App. Ct. 530, 534 (2000) (defendant may be convicted under a general verdict where there are alternative factual bases for the crime if there is evidence to support each theory).

*Remaining claims.* 1. *Jury instruction on G. L. c. 268, § 13B.* The defendant claims that the judge erred when she instructed the jury that they could convict the defendant under G. L. c. 268, § 13B, for "ma[king] an effort to mislead another person" or "attempt[ing] to influence or interfere with a criminal investigation." The Commonwealth concedes this was error; regardless of whether § 13B requires that the defendant have actually misled the officer, or have taken such steps that would mislead a reasonable officer or ordinary person (see discussion, *supra*), making a mere "effort" or "attempt" is plainly not enough. However, because the defendant did not object to this instruction, our review is limited to whether the error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Azar*, 435 Mass. 675, 685 (2002). See also *id.* at 687 (substantial risk exists if there is "a serious doubt whether the result of the trial might have been different had the error not been made"), quoting from *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999).

We are satisfied that justice did not miscarry in this case. The defense theory at trial was not that the two officers were not misled; instead, the defendant argued that he told the truth. Therefore, the error did not affect the defendant's strategy. Moreover, as noted *supra*, there was robust evidence that the defendant actually did mislead at least one of the officers (who called in others to comb the area of the supposed drive-by shooting for ballistics evidence), and we believe there was ample evidence that the defendant took actions that would have misled either a reasonable person (or a reasonable police officer, to the extent that one is different).

2. *Ineffective assistance of counsel.* Where the statements at issue were made to two different police officers, the defendant

---

[14]Since we conclude that the defendant's affirmative accounting of a crime was materially false, we need not address whether it would have been a criminal offense to lie about not knowing more than he told police.

asserts that he properly could have been convicted of the charges only if the jury unanimously agreed that a single encounter with either officer was sufficient. On this basis, he argues that he was entitled to a specific unanimity instruction, and that his trial counsel was ineffective in failing to request one. We disagree. "When a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required." *Commonwealth* v. *Thatch*, 39 Mass. App. Ct. 904, 905 (1995). Contrast *Commonwealth* v. *Conefrey*, 420 Mass. 508, 508, 511-514 (1995) (error to refuse requested instruction where defendant charged with sexually abusing child "at divers times and dates" over course of year). The defendant was charged with only one count of each offense, and the two conversations with the officers occurred during the same evening and followed a common theme, so a specific unanimity instruction was not warranted. Therefore, the defense counsel's omission did not "likely deprive[] the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

3. *Closing argument.* The defendant argues that the prosecutor's closing argument misstated the officer's testimony. When the defendant took the stand, he said that immediately before he was shot, he saw three individuals leaning against a car. In his summation, the prosecutor said that the officer "doesn't remember anything about three individuals," although the officer never said this directly. However, this was not error; the officer was asked what the defendant told him, and it was fair to infer that he did not remember the defendant's account by not mentioning it in his testimony. See *Commonwealth* v. *Ridge*, 455 Mass. 307, 330 (2009) (prosecutor may argue reasonable inferences from the evidence).

4. *Duplicative convictions.* The defendant claims that his G. L. c. 269, § 13A, conviction is duplicative of his G. L. c. 268, § 13B, conviction and therefore must be dismissed. "[A] defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not." *Com-*

*monwealth* v. *Vick*, 454 Mass. 418, 431 (2009), quoting from *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002). The two offenses are not duplicative; a false report, an element of G. L. c. 269, § 13A, was not necessary under G. L. c. 268, § 13B, and the defendant did not necessarily have to mislead the investigators — an element under § 13B — to violate § 13A. Given that each offense includes an element the other does not, the defendant's convictions were not duplicative.

*Judgments affirmed.*