NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12028


COMMONWEALTH  vs.  RAYMOND ZACHARY PAQUETTE.



Hampshire.     April 4, 2016. - October 27, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
Hines, JJ.[1]



Misleading a Police Officer.  Practice, Criminal, Instructions
to jury.




Indictments found and returned in the Superior Court
Department on June 24, 2014.

The cases were tried before C. Jeffrey Kinder, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Thomas D. Frothingham for the defendant.
Steven E. Gagne, Assistant District Attorney, for the
Commonwealth.
Yale Yechiel N. Robinson, pro se, amicus curiae, submitted
a brief.




_____

[1] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

LENK, J.  This case considers whether any lie to police during a criminal investigation "misleads" police in violation of G. L. c. 268, § 13B, the witness intimidation statute.  The statute prohibits, as relevant here, "willfully . . . mislead[ing] . . . [a] police officer."  The defendant was convicted by a Superior Court jury on two indictments charging violations of that prohibition, at two separate interviews with police, during their investigation of a fight at a party he hosted in May, 2014.  On direct appellate review, the defendant argues primarily that the jury were not instructed correctly regarding the elements of § 13B, and that his motions for required findings of not guilty should have been allowed.  We conclude that the instruction regarding the "mislead[ing]" element of § 13B was incorrect.  We further conclude that, if the jury had been instructed correctly, the evidence would have been sufficient to allow the jury to find the defendant guilty of violating § 13B at the first interview, but not at the second interview.  Accordingly, we vacate the judgment and remand the matter to the Superior Court for entry of a required finding of not guilty on the second indictment, alleging that the defendant misled police at the second interview.[2]  The defendant may be

---

[2] We acknowledge the amicus brief submitted by Yale Yechiel N. Robinson.

retried on the first indictment, concerning statements he made to police during the first interview.

1. Background. We recite the facts the jury could have found, reserving certain details for later discussion. On the night of May 3, 2014, the defendant and his sister hosted a party at their father's house in Westhampton. Two of the guests, Patrick Bousquet and Tyler Spath, became involved in an argument in the kitchen after a remark by Spath that Bousquet perceived as an insult to his girl friend. The argument turned violent when Bousquet hit Spath over the head with a glass bottle, shattering the bottle and slicing open Spath's head and neck. A larger fight erupted, involving multiple other guests. Soon afterwards, the defendant announced that the party was over, and urged everyone to go home. As the bleeding Spath left to go to the hospital, the defendant said to him, "[Y]ou weren't here, don't tell anyone you were here, nothing happened."

State police troopers interviewed the defendant twice in the course of the ensuing investigation. The first interview took place at about noon on May 4, 2014, approximately ten hours after the party ended. The defendant told the troopers that he had hosted the party, and he provided them with the names of a few friends who had attended. Believing that the defendant knew more than he was saying, however, one of the troopers urged him to be more forthcoming. The defendant then explained that he

was outside "picking up beer cans" at the time of the fight.  He claimed he "saw a bunch of commotion" and ran inside after the fight had ended.

The defendant recalled seeing Spath and several other people in the kitchen after the fight, but only identified one person, a friend of Spath's, by name.  He provided physical descriptions of three other men who were in the kitchen and who, he believed, might have been involved in the fight, and he noted that Spath's girl friend also might have been present.  He emphasized, however, that these individuals were not his friends, and that he only interacted with them "after the fact," while telling partygoers to leave.  He added, "As far as I'm concerned, if people are going to start fighting in my house, I don't need anything to get broken.  I don't -- I don't need, you know, police officers coming to my house and doing this."

The troopers did not think the defendant's account credible -- they believed that he was friends with some of the people involved in the fight, and did not want to incriminate those people.  One of the troopers explained to the defendant that they did not "want people impeding an investigation," noting that "there's all kinds of charges that are involved with that."  The interview ended shortly thereafter.

Subsequent interviews during the investigation reinforced the troopers' suspicions:  five guests, including Spath,

specifically placed the defendant in the kitchen at the time of the fight. Those interviews indicated that the defendant sought unsuccessfully to mediate the verbal argument between Bousquet and Spath before it came to blows. The interviews also led police to identify Bousquet as the person who hit Spath. By the third week of May, 2014, Bousquet had been arrested and charged in connection with the incident.[3]

The second interview of the defendant took place on the afternoon of May 29, 2014, after Bousquet had been charged. The troopers (one of whom had been at the previous interview) told the defendant that they had spoken with other people who were present during the fight, and sought to "clear the air like adults." They asked him to tell them again what he saw on the night of the party. The defendant then revealed the names of additional guests beyond those he had mentioned during his first interview. He did not, however, name Bousquet or others police understood had been present. One of the troopers warned the defendant that if he continued to withhold information from them, he was heading down a "bad road."

The defendant insisted that he had not noted who, aside from Spath, had been present. He elaborated that he was on

---

[3] The record does not contain the date or dates on which Bousquet was arrested and charged, or the specific charges against him. In December, 2014, he pleaded guilty to two counts of assault and battery by means of a dangerous weapon resulting in serious bodily injury, in violation of G. L. c. 265, § 15A.

sleep medication and "blackout drunk" during the party, and reiterated his account from the first interview that he was outside collecting cans at the time of the fight. Eventually, however, the defendant stated that he had heard secondhand that "Pat," an acquaintance of his, "got in a fight with somebody and hit [him] with a bottle."

Over the course of the second interview, the troopers repeatedly warned the defendant that he could face criminal liability if he misled them in their investigation. Nonetheless, the defendant maintained that he was not present during the fight. The troopers informed the defendant that they would be forwarding the recording of their interview to the district attorney for "further review."

2. Procedural posture. On June 24, 2014, a grand jury returned two indictments charging the defendant with misleading a police officer, one for each interview, in violation of G. L. c. 268, § 13B. The case was tried before a Superior Court jury in March, 2015. The Commonwealth played audio recordings of both of the defendant's interviews,[4] and called a number of witnesses who contradicted the defendant's account that he was outside when the fight broke out.

_____

[4] Both interviews were audiorecorded using a hand-held digital recording device. The defendant did not object to the recording. The audio recording of the second interview was incomplete, as the recording device reached its storage capacity before the interview ended.

The defendant's theory of the case was that the Commonwealth's witnesses misremembered his location at the time of the fight because they had been drunk, and were otherwise not credible.  A friend of the defendant testified on his behalf, stating that he had been outside with the defendant at the time of the fight.  The defendant did not testify.

The defendant's motions for required findings of not guilty, at the close of the Commonwealth's case and at the close of all the evidence, were denied.  On March 11, 2015, the jury found the defendant guilty of both charges.  The judge imposed a sentence of two and one-half years in a house of correction, suspended on specific conditions of probation.  The defendant appealed, and we granted his application for direct appellate review.

3.  Discussion.  Witnesses ordinarily have no obligation to disclose information to police.  See Commonwealth v. Hart, 455 Mass. 230, 238 (2009).  When a witness does choose to speak with police, however, § 13B makes it criminal to "mislead[]" them in certain circumstances.  The section provides, in relevant part:

> "Whoever, directly or indirectly, willfully . . . misleads . . .[a] police officer . . . with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby . . . with . . . a [criminal] proceeding shall be punished."

G. L. c. 268, § 13B (1) (c) (iii), (v).  The offense essentially comprises four elements:  (1) wilfully misleading, directly or

indirectly, (2) a police officer (3) with the intent to impede, obstruct, delay, harm, punish, or otherwise interfere thereby with[5] (4) a criminal investigation.  See id.  The defendant argues that the jury were not instructed properly regarding two of these elements:  wilfully misleading conduct (misleading element), and the specific intent to impede, obstruct, delay, harm, punish, or otherwise interfere with (impeding element).[6] He further argues that the evidence was not sufficient to establish these elements with respect to his statements at either the first or the second interview.  In addition, the defendant argues that his convictions were impermissibly duplicative.[7]

a.  Jury instructions.  The jury were instructed largely in accordance with the model jury instructions regarding the

---

[5] A defendant's reckless disregard of the possibility that his or her conduct might interfere with the proceeding at issue also is sufficient to establish this element of the statute. See G. L. c. 268, § 13B (1) (c) (v).  The indictments in this case, however, only alleged that the defendant acted with specific intent, not reckless disregard.  See Mass. R. Crim. P. 4 (a), 378 Mass. 849 (1979) ("An indictment . . . shall contain . . . a plain, concise description of the act which constitutes the crime or an appropriate legal term descriptive thereof").

[6] The defendant does not contest that the statements at issue in this case were made to a police officer, and that they were made during a criminal investigation.

[7] Because we conclude that the evidence was insufficient to establish that the defendant misled police at the second interview, we do not address this argument.

elements of misleading a police officer that were in effect at the time of his trial, Instruction 7.360 of the Criminal Model Jury Instructions for Use in the District Court (rev. May 2014).[8]

---

[8] With respect to the offenses charged, the jury were instructed:

"Now, let me turn to the specific charges in this case. The defendant is charged with two counts of misleading a police officer; one on May 4, 2014, and one on May 29, 2014.

"In order for you to find the defendant guilty of this offense, the Commonwealth must prove the following three elements beyond a reasonable doubt. First, that the defendant directly or indirectly [misled] another person. Second, that the other person was a police officer conducting a criminal investigation. And third, that the defendant did so with the specific intent to impede, obstruct, delay or otherwise interfere with that criminal investigation.

"To mislead means to knowingly make a false statement, to intentionally omit information from a statement causing a portion of that statement to be misleading, or to intentionally conceal a material fact and thereby create a false impression. However, objectively misleading conduct alone is not enough. The Commonwealth must also prove . . . the specific intent to impede, obstruct, or interfere with a criminal investigation. To prove this third element the Commonwealth, as I said, must prove beyond a reasonable doubt that the defendant specifically intended to impede, obstruct, delay, or otherwise interfere with a criminal investigation. That is, it must prove the purpose or objective of the defendant.

"Obviously, it is impossible to look directly into the defendant's mind, but in our everyday affairs, we often decide from the actions of others what their state of mind is. In this case you may examine the defendant's actions or/and words and all of the surrounding circumstances to help you determine his intent at the time.

The defendant argues that the instructions inaccurately described both the misleading and the impeding elements of § 13B.

　　i. <u>Misleading element</u>. The defendant argues for the first time on appeal that the jury were not instructed properly regarding the misleading element of § 13B.[9] The jury were instructed that "[t]o mislead means to knowingly make a false statement, to intentionally omit information from a statement causing a portion of that statement to be misleading, or to intentionally conceal a material fact and thereby create a false impression." The judge added, "Bear in mind that the Commonwealth need not prove that the defendant was successful in misleading the police, so long as you are satisfied beyond a reasonable doubt that the defendant made a false statement or willfully omitted material information in his statement . . . ."

_____

"Bear in mind that the Commonwealth need not prove that the defendant was successful in misleading the police, so long as you are satisfied beyond a reasonable doubt that the defendant made a false statement or willfully omitted material information in his statement to the police with the specific intent to impede, obstruct, delay, or interfere with the criminal investigation."

[9] In his written request for a jury instruction, the defendant argued, "The [d]efendant requests that he be permitted to argue that a mere denial of his presence in the kitchen while the fight was happening, whether true or false is nothing more than an attempt to exculpate himself and not an elaborate ruse to induce action by someone else." The specific language that he requested, however, addressed only the impeding element of G. L. c. 268, § 13B.

The defendant argues that that instruction incorrectly allowed the jury to find any knowingly false statement "misleading" within the scope of § 13B.  Because the defendant did not raise this argument at trial, we review the challenged instruction for a substantial risk of a miscarriage of justice.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

In our few prior cases involving § 13B, we adopted a working definition of "misleads" from the description of "misleading conduct" in 18 U.S.C. § 1515(a)(3), which defines that term for purposes of the Federal witness tampering statute, 18 U.S.C. § 1512(b).  See Commonwealth v. Figueroa, 464 Mass. 365, 372 (2013).  "Misleading conduct" under the Federal statutory scheme includes

> "(A) knowingly making a false statement; (B) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement; (C) with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity; (D) with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or (E) knowingly using a trick, scheme, or device with intent to mislead."

Id., quoting 18 U.S.C. § 1515(a)(3).  This definition heretofore generally has been adequate to the task of determining whether defendants have "misled" investigators in violation of § 13B.  Yet it also is somewhat circular -- apart from "knowingly making

a false statement," each of the enumerated categories is described using the word "mislead" or "misleading." Because of the definition's inherent limitations, we take this opportunity to clarify further the meaning of "misleads" as it appears in § 13B.

"When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose" (citation omitted). Bayless v. TTS Trio Corp., 474 Mass. 215, 219 (2016). Dictionaries have defined "mislead" as "[t]o lead in the wrong direction." The American Heritage Dictionary of the English Language 1124 (4th ed. 2006), and "to lead or guide wrongly; lead astray," Webster's New Universal Unabridged Dictionary 1230 (2003). These definitions indicate that to "mislead[]" principally entails sending a person on a proverbial "wild goose chase," by inducing the person to go somewhere materially different from where he or she otherwise would have gone.

Our cases similarly have focused implicitly on whether, given the information known to police at the time of the defendant's alleged statements, the statements reasonably could have led police astray, i.e., caused them to pursue a course of investigation materially different from the course they otherwise would have pursued. In Figueroa, 464 Mass. at 372-373, for example, we affirmed a defendant's conviction under

§ 13B where the evidence indicated that the defendant, a parolee, had presented a detailed false alibi to his parole officer during her investigation into possible violations of the conditions of his parole.[10] Although that conduct did not actually mislead the parole officer, we concluded that it reasonably could have done so. See id. at 373. The Appeals Court likewise has affirmed a conviction under § 13B of a defendant who, after being shot, falsely told police that the shooter had been a considerable distance away, although forensic evidence indicated that the shooter had been within feet of him. See Commonwealth v. Fortuna, 80 Mass. App. Ct. 45, 47, 50-51 (2011). The court noted specifically that "the statements that the defendant made to the initial officer on the scene were . . . sufficient to mislead a reasonable person in his position." Id. at 51.[11] In Commonwealth v. Morse, 468 Mass. 360, 361, 364, 372-373 (2014) (Morse), by contrast, we concluded

---

[10] The conditions of the defendant's parole in that case included "not go[ing] to areas where children under eighteen years of age would congregate," and "not enter[ing] into a relationship with someone who had children without informing his parole officer." Commonwealth v. Figueroa, 464 Mass. 365, 366 (2013). The defendant told the officer that he had been at an Alcoholics Anonymous meeting and that his global positioning system monitor was broken, when in fact he had been trick-or-treating with the children of a woman whom he secretly had been dating. Id. at 372-373.

[11] See also Commonwealth v. Occhiuto, 88 Mass. App. Ct. 489, 506 (2015) (noting in dicta that defendant's false claim to police that he had acquired money from drug theft by working as fisherman would have violated G. L. c. 268, § 13B, if statement had been made during enumerated criminal proceeding).

that a suspect's answer of "No" in response to a police officer's question whether he had consumed any substances in addition to alcohol before a boating accident "that could've impaired [his] ability to . . . be aware of what was going on around [him]" was not "misleading" within the meaning of § 13B, because the answer was a subjective assessment of the suspect's response to an intoxicating substance, and therefore did not "rise to the level of a knowingly false statement or an intentional omission of a material fact."

In Morse, supra at 372, we observed that each aspect of the working definition of "misleads" suggests "a knowing or intentional act calculated to lead another person astray."  We further observed that "intimidat[ing]" and "harass[ing]" conduct, both of which are prohibited under the same subsection of § 13B as "mislead[ing]" conduct, similarly involve "malicious acts calculated to produce certain effects on a third party." See id. at 375, citing G. L. c. 168, § 13B (1) (c).  The Appeals Court likewise has defined "intimidating conduct" for purposes of § 13B as "acts or words that would instill fear in a reasonable person."  See Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 535 (2010).  Given this, it seems evident that whether a statement is "mislead[ing]" for purposes of § 13B depends on whether it reasonably could lead investigators to pursue a course of investigation materially different from the course

they otherwise would have pursued.[12]  In short, "He went that way" may well be misleading, but "I don't know" likely is not.[13]

Understanding the definition of "misleads" to include only those lies that reasonably could lead investigators to pursue a materially different course of investigation is in keeping with the statutory purpose of § 13B.[14]  In Morse, supra at 367-370, we examined in detail the statutory history of § 13B and its relationship to other crimes against public justice.  We concluded that § 13B is targeted specifically at "countering the effect of witness intimidation on the successful prosecution of

---

[12] Federal courts have interpreted the definition of "misleading conduct" under 18 U.S.C. § 1515(a)(3) similarly to entail conduct that reasonably could lead someone astray in a material way.  See, e.g., United States v. Kulcyzk, 931 F.2d 542, 548 (9th Cir. 1991) ("The statute . . . appears to require that the defendant mislead the witness as to the substance of his testimony" [emphasis added]); United States v. King, 762 F.2d 232, 237 (2d Cir. 1985) ("[T]he evidence failed totally to support any inference that [government witness] was, or even could have been, misled").

[13] Cf. Commonwealth v. D'Amour, 428 Mass. 725, 744 (1999), citing Commonwealth v. Giles, 350 Mass. 102, 111 (1966) (noting in perjury context that "test for materiality is not whether testimony did in fact influence pertinent determination, but whether it had a reasonable and natural tendency to do so").

[14] See Commonwealth v. One 1987 Mercury Cougar Auto., 413 Mass. 534, 537-38 (1992) ("While courts should look to dictionary definitions and accepted meanings in other legal contexts, . . . their interpretations must remain faithful to the purpose and construction of the statute as a whole" [citation omitted]).

criminals."  See id. at 367.[15]  The prohibition against misleading conduct in § 13B advances that purpose by criminalizing conduct that reasonably could affect in a material way the investigation culminating in such a prosecution.

The judge understandably instructed the jury in accordance with the definition of "misleading conduct" that we adopted in Figueroa, 464 Mass. at 372.  That instruction, however, indicated incorrectly that a defendant "misleads" police if he or she knowingly makes any false statement to police, or omits or conceals material information with the intent to mislead police or give them a false impression.[16]  Because the instruction allowed the jury to conclude that the defendant "misled" police even if his false or incomplete statements could not reasonably have led police to pursue a materially different course of investigation, it created a substantial risk of a miscarriage of justice.[17]  See Alphas, 430 Mass. at 13.

ii.  Impeding element.  The defendant also argues that the jury were not properly instructed regarding the impeding element of § 13B.  Only some of the defendant's requested language

---

[15] Although G. L. c. 268, § 13B, originally was enacted in 1969, the prohibition on misleading conduct first was added in 2006.  See St. 2006, c. 48, § 3; St. 1969, c. 460.

[16] The Commonwealth likewise suggested incorrectly during closing argument that the defendant had violated the statute simply because "he lied to the police."

[17] The verdict slip did not ask the jury to specify what kind of "misleading conduct" they found.

concerning this element was incorporated in the final jury instruction: the jury were instructed that "objectively misleading conduct alone is not enough" to establish the offense, and that the Commonwealth also must prove "that the defendant specifically intended to impede, obstruct, delay, or otherwise interfere with a criminal investigation." They were instructed further that they could "examine the defendant's actions or/and words and all of the surrounding circumstances to help [them] determine his intent at the time." Over the defendant's objection, however, the judge declined to include language to the effect that "when an individual denies his guilt, either falsely or truthfully, without otherwise making any affirmative misrepresentations or attempting to shift the blame onto a third party, it generally would be in aid of exculpating himself from liability, rather than of inducing action by someone else." See Morse, supra at 375.

The judge's decision to omit such language was not prejudicial error. See Commonwealth v. Kaeppeler, 473 Mass. 396, 406 (2015). It is possible that the defendant in this case, like the defendant in Morse, supra at 374, intended only to minimize his involvement in the events being investigated by police out of concern that he might be exposed to criminal liability, either for his involvement, however minimal, in the circumstances surrounding the assault on Spath, or for his

involvement in other criminal activity that was not the primary focus of the investigation by police, such as underage drinking.[18]  Nonetheless, it was not necessary to instruct the jury specifically regarding other intentions that the defendant might have had during his conversations with police.  In Morse, supra at 374, we chiefly considered whether a suspect's short exculpatory denial, on its own, allowed for an inference of specific intent to interfere with the police's investigation.  We concluded the denial did not allow for such an inference, because, unlike "a content-laden fabrication designed to send police off course, thereby interfering with their investigation," it left police "in the same position they would have been in had the [suspect] instead remained silent."  Id.

Here, by contrast, the defendant's statements were more extensive than a simple exculpatory "No," and in any event were not the only evidence of his intent to interfere in some way with the police's investigation.  Other evidence included the defendant's exhortations to Spath as he left the party not to tell anyone that he had been at the party, and his suggestion to police during the first interview that he had told partygoers to leave after the fight in order to avoid a police investigation

---

[18] The defendant was twenty-one years old at the time of the party; not all of the guests, however, were of legal drinking age.  See G. L. c. 138, § 34 (criminalizing furnishing of alcohol to minors).

into what had happened.  Accordingly, a specific instruction regarding the inferences that could be drawn from a short exculpatory denial would not have been appropriate.  It was sufficient for the jury to be instructed, as they were, that the defendant's mens rea could be inferred from circumstantial evidence.  See Commonwealth v. Stewart, 454 Mass. 527, 535 (2009).  See also Commonwealth v. Robinson, 449 Mass. 1, 8 (2007) ("A judge need not use any particular words in instructing the jury as long as the legal concepts are properly described").

b.  Sufficiency of the evidence.  Although the jury were not instructed correctly regarding the misleading element of § 13B, we consider whether, had a correct instruction been given, the evidence would have been insufficient to allow the jury to convict on either indictment.  See Commonwealth v. Lapage, 435 Mass. 480, 486 (2001).  "[W]e apply the well-settled and familiar Latimore standard:  that is, viewing the evidence in the light most favorable to the Commonwealth, we ask whether the evidence and the inferences that reasonably could be drawn from it were 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'"  Commonwealth v. Scott, 472 Mass. 815, 820 (2015), quoting Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

The evidence presented might have allowed a correctly instructed jury to conclude that the defendant's statements at the first interview violated § 13B.  Although the Commonwealth did not present any direct evidence of the effect of the defendant's statements at that interview on the investigation by police,[19] the statements were made while the investigation still was in its early stages.  Accordingly, the jury might have inferred that the defendant "misled" police within the meaning of § 13B by lying about his location at the time of the fight, or by misrepresenting that he did not know the identities of certain people involved, if they found that such statements reasonably could have influenced the investigation in a material way.  The jury also might have inferred from circumstantial evidence that the defendant specifically intended to impede, obstruct, delay, or otherwise interfere with the investigation.

By contrast, even if the jury had been instructed correctly, no view of the evidence would have allowed them to conclude that the defendant violated § 13B at the second interview.  As noted, statements are not misleading within the meaning of § 13B unless, given the information known to police at the time the statements were made, the statements reasonably could have led police to pursue a materially different course of

---

[19] Contrast <u>Commonwealth</u> v. <u>Morse</u>, 468 Mass. 360, 374-375 (2014) (summarizing evidence regarding alleged effect of defendant's statements on course of investigation).

investigation. The Commonwealth presented no direct evidence, however, that the defendant's statements at the second interview reasonably could have led police astray in this manner. Nor was the evidence that was presented sufficient to allow for an inference to that effect. By the time of the second interview, police already had conducted an extensive investigation, and Bousquet had been arrested and charged. Furthermore, once police asked the defendant to "clear the air," they presented him with the unenviable choice between admitting that he had lied and omitted information at his first interview, and repeating his misstatements from the first interview, either of which could expose him to potential criminal liability under § 13B. Given the timing of the defendant's statements and what police already knew, and in the absence of other evidence indicating that the statements reasonably could have affected the police investigation in a material way, the evidence was not sufficient to allow for the conclusion that the defendant "misled" police, within the meaning of § 13B, at the second interview. See Scott, 472 Mass. at 820. Therefore, the defendant's motion for a required finding of not guilty with respect to the second indictment, pertaining to the second interview, should have been allowed.

4. Conclusion. The judgments of conviction are vacated and set aside. The matter is remanded to the Superior Court for

entry of a required finding of not guilty with respect to the second indictment, alleging that the defendant misled police at the second interview, and further proceedings consistent with this opinion.

<u>So ordered</u>.