Following a jury trial, the defendant, Gabriel Arias, was convicted of misleading a police officer during an investigation in violation of G. L. c. 268, § 13B. On appeal, the defendant challenges the jury instructions and the admission of statements and gang evidence pursuant to a joint venture theory. We agree that the jury instructions inaccurately defined an element of the offense and created a substantial risk of a miscarriage of justice. We therefore reverse. We also determine that the evidence would have been sufficient to allow the jury, if correctly instructed, to find the defendant guilty of violating § 13B.
Discussion. a. Jury instructions. The defendant contends that the trial judge, who relied on the model jury instructions in effect at the time of trial, inaccurately instructed the jury on the elements of misleading a police officer.[2] Because the defendant did not raise the argument at trial, we review the challenged instruction for a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).
The Supreme Judicial Court clarified the meaning of "misleads" in the context of false statements in Commonwealth v. Paquette, 475 Mass. 793 (2016).[3] See Commonwealth v. Tejeda, 476 Mass. 817, 819-820 (2017) (clarifying the meaning of "misleads" in the context of nonverbal conduct). As here, the jury in Paquette were instructed largely in accordance with the model instructions in effect at the time of trial. See Paquette, supra at 798-799. However, the instructions incorrectly permitted the jury "to conclude that the defendant 'misled' police even if his false or incomplete statements could not reasonably have led police to pursue a materially different course of investigation." Id. at 802. As we are compelled to follow the mandatory language and holding in Paquette, we conclude that this instruction created a substantial risk of a miscarriage of justice.
b. Sufficiency of the evidence. We now consider whether the evidence would have been insufficient to allow the jury to convict the defendant had they received a correct instruction about the elements of § 13B. See id. at 804. Under the familiar standard of Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), looking at the evidence in a light most favorable to the Commonwealth, there would have been sufficient evidence for the jury to conclude that the defendant violated the statute.[4]
At trial, the Commonwealth presented evidence that the defendant spoke with police on August 28, 2012, as officers investigated a home invasion, attempted robbery, and murder that occurred in Billerica in the early hours of July 7, 2012. In summary, the defendant told police that he was unaware of any incident occurring in Billerica between July 6 and July 7, and that he was not in Billerica that night. He initially denied being in contact with Steven Touch and Adam Bradley that night, both of whom had been identified in the investigation. He instead told police that he went to a party in Salem, leaving for the party between 10:00 P.M. and 11:00 P.M. and returning to his home in Lynn between 2:00 A.M. and 3:00 A.M. During the interview, he gave the officers his cellular telephone (cell phone) number and also told them that his cell phone was passcode protected and that no one else had access to it.
The Commonwealth presented evidence contradicting the defendant's statement about his whereabouts and communications. Police had been investigating the incident before speaking with the defendant. They identified several individuals in the course of that investigation, including two individuals matching physical descriptions of the intruders. Police also obtained "call detail records" for the defendant and several others.[5] When police told the defendant that the call detail records indicated that the defendant spoke with Touch and Peter Bin, another person identified in the investigation, the defendant then acknowledged the calls and said both Bin and Touch called about going to Lowell, and that Touch called the defendant's home landline telephone at an early hour "[t]o see what's up."
After speaking with the defendant, the police obtained information from his mother contradicting the defendant's statement to them. The defendant's mother, who lived with the defendant, testified that between 5:30 A.M. and 6:00 A.M. on the day in question she answered a call on their home's landline telephone from a friend of the defendant,[6] and that the friend said that the defendant left his cell phone in the friend's car that night. She also testified that she believed that the defendant returned home at 5:00 A.M.
The police also obtained cellular site location information (CSLI) for the defendant's password protected cell phone.[7] The CSLI placed the defendant's cell phone, and inferentially the defendant, at 3:33 A.M. on Boston Road in Billerica, which is the same street where the home invasion occurred,[8] and is consistent with the defendant traveling from Marblehead to Billerica to Lynn. This evidence contradicted the defendant's statement to police that he returned home between 2:00 A.M. and 3:00 A.M. The jury could infer that the defendant was with the others under investigation and that he provided a false alibi.
The jury could have concluded that the defendant's statements "reasonably could have led police to pursue a materially different course of investigation." Paquette, 475 Mass. at 805. The defendant's responses to police regarding when he left and arrived home went beyond a "short exculpatory denial" that would have left police in the same position had the defendant remained silent. Id. at 803. See Commonwealth v. Morse, 468 Mass. 360, 374 (2014) (defendant's statement was an exculpatory denial, "not a content-laden fabrication designed to send police off course"). Although police had identified two individuals matching descriptions of the intruders, a victim reported that there were four intruders and police were still investigating and identifying others involved. The jury reasonably could have inferred that the defendant sought to divert attention from himself and suggest that he could not have been involved with the alleged crimes. The statements could have led police to investigate the defendant's whereabouts after he left the party in Salem and investigate whether he further misrepresented his contact with Bin and Touch, or they could have led the police to further investigate other potential persons of interest. See Paquette, supra at 800-801. The statements "were affirmative misrepresentations the jury could reasonably conclude were made to send the police off course." Commonwealth v. Occhiuto, 88 Mass. App. Ct. 489, 506 (2015). It is inconsequential that the statements did not actually mislead the police. See Commonwealth v. Figueroa, 464 Mass. 365, 372-373 (2013) (defendant on parole misled officer when misrepresenting his whereabouts).
Conclusion. The judgment is reversed, and the verdict is set aside.[9]
So ordered.
Judgment reversed. Verdict set aside.

The elements of misleading a police officer are "(1) wilfully misleading, directly or indirectly, (2) a police officer (3) with the intent to impede, obstruct, delay, harm, punish, or otherwise interfere thereby with (4) a criminal investigation" (footnote omitted). Commonwealth v. Paquette, 475 Mass. 793, 797 (2016).

The defendant's trial occurred in 2014; the trial judge issued jury instructions prior to and without the benefit of Paquette.

Both parties reference information that was not before the jury at trial. In reviewing the sufficiency of the evidence, we only consider the evidence actually before the jury.

The call detail records provided information about calls placed to and from telephone numbers, with the date and time of each call.

The Commonwealth elicited testimony from an officer that the defendant's mother told him that "Steven" called the defendant's home that morning. The testimony was admitted for impeachment purposes only.

The trial record is unclear when police requested the CSLI and whether they received it before speaking with the defendant. The trial record was clear that the police had the call detail records before speaking with the defendant because they challenged his initial statement to them based on the records.

A victim testified that the home invasion began at approximately 3:50 a.m.

We do not reach the other issues raised by the defendant on appeal. The parties may address these issues before the Superior Court at any retrial.