This is an interlocutory appeal from an order of a judge of the Superior Court allowing the defendant's motion to dismiss an indictment for misleading a police officer. See G. L. c. 268, § 13B (1) (c ).[3] We affirm.
The defendant moved to dismiss the indictment on the ground, among others, that there was insufficient evidence before the grand jury that the defendant's statements could reasonably have caused an investigating officer to change the course of the investigation in a material way. See Commonwealth v. Paquette, 475 Mass. 793, 800-801 (2016). "To sustain an indictment, the grand jury must be presented with 'sufficient evidence to establish the identity of the accused ... and probable cause to arrest him' for the crime[ ] charged," Commonwealth v. Rakes, 478 Mass. 22, 29 (2017), quoting Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). "Our review of a judge's determination of probable cause is de novo." Commonwealth v. Coggeshall, 473 Mass. 665, 667 (2016), citing Commonwealth v. Long, 454 Mass. 542, 555 (2009).
Background. We summarize the evidence presented to the grand jury. The defendant, Adam Larsen, is a Plymouth police officer. On April 8, 2016, Larsen arrested an intoxicated woman for disturbing the peace. The woman suffered a fractured skull during an incident that occurred while Larsen was escorting her to a holding cell. The holding cell was monitored by a surveillance camera.[4] On April 11, 2016, while investigating the incident, Captain John Rogers reviewed the surveillance video and determined that "[d]etailed review shows [the woman] backing into the cell when it appears that she was pushed by someone outside the cell which caused her to fall striking her head."
After watching the video, Captain Rogers requested that all the officers on duty that night complete reports "outlining their knowledge and actions during this incident." All of those incident reports were completed by April 14. In his incident report, Larsen stated that "[the woman] walked into her cell [but] then charged forward as [he] was attempting to close the cell door. [He] placed [his] arm out, in a locked position to stop [her] forward progress from exiting the cell. [The woman] walked into [his] hand and immediately lost her balance. [She] fell backwards and struck the back of her head on the edge of the concrete cell block bed."
On April 25 and 28, Captain Rogers conducted interviews with Lieutenant Paul Higgins and Sergeant Christopher Butler -- two officers who were on duty at the time of the incident. On April 29, Captain Rogers interviewed Larsen -- before Larsen had the opportunity to view the video recording. At the interview, Larsen substantially echoed the version of events he laid out in his incident report.[5] Captain Rogers, however, determined that Larsen's account of the incident was inconsistent with what the video showed. Specifically, Rogers described the video as showing that the woman "backed into the cell and never appear[ed] to try and leave," and stated the "[v]ideo surveillance shows [Larsen's] black latex gloved hand moving through the plane of the door as [the woman] falls back into the cell." This description of the video differed from Larsen's account that the woman ran into his locked-out arm. After Rogers conducted follow-up interviews, this indictment was sought. As clarified by the Commonwealth's bill of particulars, Larsen's statements on April 29 formed the basis of the charge.
Discussion. The elements of the offense of misleading a police officer are "(1) wilfully misleading, directly or indirectly, (2) a police officer (3) with the intent to impede, obstruct, delay, harm, punish, or otherwise interfere thereby with (4) a criminal investigation" (footnote omitted). Paquette, 475 Mass. at 797. "[T]o find the defendant guilty of misleading a police officer with a lie, the jury would need to find not only that the statement was false, but that it reasonably could have led law enforcement officers to pursue a materially different course in their investigation from one they otherwise would have pursued because it sent them in the wrong direction, i.e., a 'wild goose chase.' " Commonwealth v. Tejeda, 476 Mass. 817, 819 (2017), quoting Paquette, supra at 800-801.
The Commonwealth contends that Larsen's statements to the investigating officer were misleading because a grand jury could find probable cause that at the time she was pushed, the woman was backing into the cell and did not charge toward Larsen. For this reason, the Commonwealth asserts, the grand jury heard sufficient evidence to support a finding of probable cause that the defendant intended to mislead Captain Rogers.
We agree that the evidence was sufficient to establish probable cause to believe that Larsen's statements were false and intended to mislead. However, the evidence also shows that the statements could not reasonably have caused an investigating officer to be misled in such a way as to affect the course of the police investigation. See Paquette, 475 Mass. at 805. We consider the "timing of the defendant's statements and what police already knew, and ... the absence of other evidence indicating that the statements reasonably could have affected the police investigation in a material way." Id.
Captain Rogers viewed the cell block surveillance footage on April 11 in advance of his initial interviews with Larsen and the other officers. By that time Captain Rogers had already seen the video and formed the opinion as to what it showed.[6] At the time he interviewed Larsen, Captain Rogers knew that Larsen's account was at odds with the video footage. Larsen's account of the incident could not reasonably have led Captain Rogers to pursue a materially different course in his investigation. See Tejeda, 476 Mass. at 819.
Rather, Larsen's account led Captain Rogers to hone in on Larsen's alleged wrongdoing.[7] See Paquette, 475 Mass. at 805. Following Larsen's April 29 interview, Captain Rogers conducted follow-up interviews, but he did not shift the focus of the investigation. Captain Rogers re-interviewed Larsen, but he was not tempted to pursue a "wild goose chase." "[I]n the absence of other evidence indicating that the statements reasonably could have affected the police investigation in a material way," the indictment was not supported by sufficient evidence to establish probable cause. Id.
Alternatively, the Commonwealth contends that the judge erred as a matter of law in declining to permit the Commonwealth to proceed on a lesser included offense of attempt to mislead a police officer. "[M]aking a mere 'effort' or 'attempt' is plainly not enough" under the statute. Commonwealth v. Fortuna, 80 Mass. App. Ct. 45, 54 (2011). The Legislature included attempt language in subparagraph (a ) of G. L. c. 268, § 13B (1), but omitted it from subparagraph (c ), the subparagraph relevant here. "The omission of particular language from a statute is deemed deliberate where the Legislature included such omitted language in related or similar statutes." Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 129 (2014). See Commonwealth v. Gagnon, 439 Mass. 826, 833 (2003) ("[W]here the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded" [citation omitted] ). See also Commonwealth v. G.F., 479 Mass. 180, 202 (2018). The omission of the word "attempt" was deliberate. The judge did not err in dismissing the indictment.
Order allowing motion to dismiss affirmed.

In a separate indictment, the defendant was also charged with assault and battery causing serious bodily injury, G. L. c. 265, § 13A (b ).

The surveillance camera took pictures at short intervals, and did not capture sound. The video recording at issue was submitted to the grand jury.

For example, during the interview Larsen described the incident as follows:
"She then walked into the cell, and as I was getting ready to close the door, she turned around and she was kinda coming right at me in a fast, very aggressive, angry look on her face. So I put my hand straight out just to stop her from exiting the cell and hitting me, she was coming right at me, cause I was right there. Lt. Higgins was right next to me. At that time, she hit my hand, she fell back and then she fell back and hit her head on the cell bed."

We have carefully viewed the video recording, consistent with the standard of review.

On May 12, Rogers interviewed Larsen a second time to "review surveillance video of the incident in question and have Officer Larsen respond to what was observed based on inconsistencies [between] the video and what was initially reported by Officer Larsen."