NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-293

COMMONWEALTH

vs.

PHILLIP T. PALMER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his convictions after a jury trial of assault and battery by discharge of a firearm, carrying a loaded firearm without a license, and carrying a firearm without a license. With regard to the conviction of assault and battery by discharge of a firearm, the defendant argues that the evidence was insufficient to show that he was the shooter and that a detective's testimony about what was depicted in video footage was an improper lay opinion, the admission of which created a substantial risk of a miscarriage of justice. We disagree and thus affirm that conviction. We reverse the convictions of carrying a loaded firearm without a license and carrying a firearm without a license because, as the defendant

argues and the Commonwealth concedes, the evidence was insufficient to show that the defendant lacked a license.

Background.  We recite the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Tavares, 484 Mass. 650, 651 (2020).  On October 31, 2020, around 11:30 P.M., Worcester police were dispatched in response to a ShotSpotter activation[1] at 92 Gates Street.  At the scene the officers found ten shell casings on the street and sidewalk, bullet holes in the building's exterior, and the victim inside, shot and suffering from severe injuries.  After reviewing surveillance footage, officers focused on a silver sport utility vehicle (SUV) seen in the neighborhood around the time of the shooting.

Katelyn Bancroft, who was then in an "on and off" relationship with the defendant, testified that the defendant told her on the evening of the shooting that they were going to "his friend's house to pick up drugs."  They were in a silver SUV, which Bancroft said was owned by a woman who lived with the defendant.  The defendant drove the two of them to Worcester and parked on Walpole Street, which is near Gates Street.  While Bancroft stayed in the car, the defendant got out, retrieved a pouch from the backseat, and walked away.  After fifteen or

---

[1] ShotSpotter is a system that uses sensors to detect possible gunshots.  See Commonwealth v. Watson, 487 Mass. 156, 157 n.2 (2021).

2

twenty minutes, the defendant returned and then drove them back to his house.  This narrative was consistent with data showing the location of the defendant's cellular telephone before and after the shooting.[2]

The Commonwealth gathered surveillance footage and introduced a compilation video at trial, which included footage from a motion-activated street camera located close to the crime scene.  The footage shows a man wearing a sweatshirt with an Adidas emblem walking on the sidewalk toward 92 Gates Street at around 11:20 P.M.  The footage then jumps ahead to show the man standing outside 92 Gates Street.  After another jump, the footage moves to approximately 11:27 P.M., around the same time as the ShotSpotter alert.  The man in the Adidas sweatshirt is seen walking away from 92 Gates Street, alternating between a jog and a brisk walk.  As the man turns the corner onto Walpole Street, he places his hands at his waist and partially pulls up his sweatshirt, as though he is putting something in his waistband.  He then runs down Walpole Street.

At trial Bancroft identified the man in the Adidas sweatshirt as the defendant, and the silver SUV in the video

---

[2] The defendant incorrectly asserts that there was no evidence showing that the number associated with the telephone was his.  When the Commonwealth asked a detective whether "a phone number of this defendant [became] relevant" during the course of the investigation, the detective answered yes and identified the number.

3

footage as the vehicle that the defendant was driving that evening. Bancroft also testified that, two months before the shooting, she was at the defendant's house and saw him with a firearm, which the defendant told her was of nine-millimeter caliber. The ten shell casings recovered at the crime scene were all nine-millimeter casings.

Discussion. 1. Sufficiency of evidence of identity. We review a challenge to the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). The Commonwealth can meet its burden of proof based on circumstantial evidence alone. See Commonwealth v. Morrison, 97 Mass. App. Ct. 731, 735 (2020).

The evidence here -- in particular, Bancroft's testimony combined with the video footage and cellular data -- was plainly sufficient to show that the defendant was in the vicinity of 92 Gates Street at the time of the shooting. Indeed, the defendant does not contest that the evidence allowed the jury to find that he was the man in the Adidas sweatshirt seen in the video footage. He claims, however, that the jury could not have found beyond a reasonable doubt that he was the shooter. We disagree. Although the Commonwealth's evidence was not overwhelming, the

4

"reasonable and possible" inferences the jury could draw from the evidence were sufficient to sustain the conviction. Morrison, 97 Mass. App. Ct. at 735, quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980).

As the defendant correctly observes, "mere presence at the scene of a crime, without more, is not sufficient to support a conviction." Commonwealth v. Brown, 490 Mass. 171, 179 (2022), quoting Commonwealth v. Mazza, 399 Mass. 395, 399 (1987). But here, there was more. The defendant's presence at 92 Gates Street coincided with the time of the shooting: police received the ShotSpotter alert at approximately 11:30 P.M., and the video footage captures the defendant leaving 92 Gates Street around that same time. The footage then shows the defendant moving briskly and deliberately away from the crime scene, making a motion consistent with placing an object in his waistband, and then running once he got to Walpole Street. These movements create a reasonable inference that the defendant fired the shots and then quickly made his way back to where he had parked the SUV on Walpole Street. Although the defendant asserted at oral argument that he might have been running to avoid the shots, the jury could have found that the deliberate nature of his movements was more consistent with his being the assailant, rather than a panicked bystander. See Commonwealth v. Mendez, 476 Mass. 512, 523-524 (2017) ("If the evidence lends itself to

5

several conflicting interpretations, it is the province of the jury to resolve the discrepancy and determine where the truth lies" [citation omitted]).  In addition, Bancroft's testimony established that the defendant had access to a nine-millimeter firearm, the same caliber as the shell casings found at the scene.  This evidence in its totality was sufficient to prove that the defendant was the shooter.  See Commonwealth v. Jones, 477 Mass. 307, 316 (2017) (jury could infer defendant was shooter where witnesses observed someone matching his description running alone, away from victim's car, "clutching something in his pocket consistent with a firearm").

We are unpersuaded by the defendant's argument that the jury had to resort to speculation to convict him, given that the video footage shows the presence of vehicular traffic and possibly another pedestrian on Gates Street around the time of the shooting.  The Commonwealth had the burden of proving that the defendant pulled the trigger, but did not need to disprove the possibility that someone else could have done so.  See Morrison, 97 Mass. App. Ct. at 735.  Based on the evidence cited above, the Commonwealth met its burden.  We are also unpersuaded by the defendant's suggestion that the lack of evidence connecting the defendant to the victim was fatal to the Commonwealth's case, as the Commonwealth need not prove motive

6

to sustain a conviction.  See Commonwealth v. Fortuna, 80 Mass. App. Ct. 45, 51 n.8 (2011).

2.  Admission of lay opinion.  During the testimony of Worcester Police Detective Robert Molinari, the prosecutor played the video footage for the jury and questioned Molinari about what he saw as it was playing.  After a few questions, the judge interrupted and sua sponte instructed the jury that it was their "independent determination of what is or is not in the video that matters."  Later, at the point in the footage where the defendant is seen placing his hands at his waist, the prosecutor asked, "And what is depicted in this particular video?"  Molinari replied that, based on his training and experience, "[i]t appear[ed] to [him] that it's someone putting a handgun in their waistband."  Although defense counsel did not object, the judge interrupted the questioning again and instructed the jury as follows:

> "All right.  So ladies and gentlemen of the jury, I just want to remind you again, this officer is explaining a compilation video as to how this investigation came to focus on this defendant all right."

> "He's making statements about things he's observed, and opinions he has.  You may accept those, reject them, accept them in part, reject them in part.  The obligation is on each and every one of you to make your independent determination about what this video shows, who it shows, when things happened, or not."

The defendant now argues for the first time on appeal that Detective Molinari's testimony was an improper lay opinion

7

because he was in no better position than the jury to determine whether a firearm could be seen in the video footage. It is unclear from the defendant's brief whether he is claiming that the judge should have struck the testimony sua sponte, or if he is raising his claim solely under the rubric of ineffective assistance of counsel. Either way, the defendant cannot prevail unless the admission of the testimony created a substantial risk of a miscarriage of justice. See Commonwealth v. LaChance, 469 Mass. 854, 858 (2014).

We discern no such risk. Despite the lack of an objection, the judge gave two forceful limiting instructions, emphasizing that the jury had the obligation to determine for themselves what the video footage showed. The jury is presumed to have followed these instructions. See Commonwealth v. Shakespeare, 493 Mass. 67, 101 (2023) (no error in admission of officer's testimony narrating what was happening in videos where "judge gave a forceful instruction to the jury during the testimony, which emphasized that [the] testimony was for the purpose of helping the jury understand why police made certain investigatory decisions and that it was the jury's job to decide what they saw in the video"); Commonwealth v. Chin, 97 Mass. App. Ct. 188, 205 (2020) (jury presumed to have followed instruction that officer's observations of video "should not override the jurors' own observations if they were at odds").

Furthermore, the challenged testimony was brief, and the Commonwealth did not refer to it in closing.  In these circumstances we conclude that any error did not give rise to a substantial risk of a miscarriage of justice.

3.  Sufficiency of evidence of lack of firearm license.  We agree with the defendant, and the Commonwealth's concession, that the evidence was insufficient to prove the element of lack of licensure for the charges of carrying a loaded firearm without a license and carrying a firearm without a license.  See Commonwealth v. Guardado, 491 Mass. 666, 690 (2023), S.C., 493 Mass. 1, cert. denied, 144 S. Ct. 2683 (2024).  An employee of the Department of Criminal Justice Information Services (DCJIS) testified that he conducted a records search using the defendant's name and a certain date of birth and obtained a result of "[n]o records found," indicating that the defendant did not have a license to carry a firearm.  The problem is that the Commonwealth introduced no evidence that the birth date the DCJIS employee used to perform the search is the defendant's actual birth date.  In Commonwealth v. Smith, 496 Mass. 304, 317 (2025), the Supreme Judicial Court held that, "in the absence of any substantive evidence of the defendant's birth date," the testimony of a DCJIS employee that he conducted a search using the defendant's name and what he presumed to be the defendant's

birth date was insufficient to prove lack of licensure.  <u>Smith</u> directly controls here.

    <u>Conclusion</u>.  The judgment of conviction of assault and battery by discharge of a firearm is affirmed.  The judgments of conviction of carrying a loaded firearm without a license and carrying a firearm without a license are reversed, the verdicts are set aside, and the matter is remanded for entry of judgments in favor of the defendant.

<u>So ordered</u>.

By the Court (Shin, Walsh & Allen, JJ.[3]),

Clerk

Entered: March 20, 2026.

---

[3] The panelists are listed in order of seniority.